## FRINK *a.* MORRISON.

*Supreme Court, First District; Special Term, July,* 1861.

SCIRE FACIAS.—RIGHTS OF MORTGAGEES AS TO PRIOR LIENS.— EXECUTION AFTER DEATH OF JUDGMENT-DEBTOR.

A mere mortgagee cannot move to set aside an execution against the land mortgaged, though such execution was irregularly issued after the death of the judgment-debtor, and without proceedings in the nature of *scire facias.*

A judgment should not be set aside, on motion of one having a subsequent lien, upon the ground that it has been satisfied, if the evidence is conflicting. The lienor must resort to an action for the purpose.

*It seems,* that chapter 295 of the Laws of 1850—giving proceedings before the surrogate—does not supersede the necessity of proceedings in the nature of a *scire facias,* before an execution can be issued after the death of the judgment-debtor.

Motion to set aside a judgment and execution.

The applicant, Thomas Holyoake, moved upon several affidavits. His own set forth that the defendant and judgment-debtor, Morrison, died in March, 1860; that in June, 1858, Morrison applied to him for a loan on a mortgage of a house and grounds in Brooklyn, and offered to employ a lawyer to search the title. That Morrison afterwards informed him that he had employed Edward P. Clark to make such search, and that Clark had satisfied himself that there were no incumbrances on the premises. That thereupon deponent lent Morrison $6,500 on a bond and mortgage of the premises. That the principal of the bond, and interest from June 15th, 1859, remained unpaid, and the mortgage had been foreclosed. That deponent had recently discovered four judgments recorded against Mor-

rison, having a prior lien on the premises, of which, however, all were satisfied without dispute (though not of record), except the one in this action, which was for $7,599.41, docketed April 26th, 1858. That this judgment was docketed in the name of *Fink* instead of *Frink*. That it was obtained by means of a complaint signed by Edward P. Clark, as attorney for the plaintiff, and an offer to compromise under section 385 of the Code, signed by Guernsey Sackett (a lawyer employed by Clark, and in his office), as attorney for the defendant. That an execution thereon remained in the hands of the late sheriff of Kings county for two years, without any effort being made to collect the money. That Clark had applied to the surrogate of Kings county, since Morrison's death, for leave to issue execution on the judgment: that deponent appeared to oppose, but was not allowed to do so. That he believed that the judgment had been fully satisfied in fact.

The affidavit of Henry Oldfield stated that he was Morrison's book-keeper from 1855 until his death. That he made up the account between Morrison and Frink on March 25th, 1858, upon which this judgment was taken, and that by mistake a sum of $315 was not credited to Morrison. That after this account was made up, one Sly paid to Frink $5,000, which was repaid by Morrison; and Morrison paid Frink further about $10,000 on general account, besides a still larger amount specifically applied to particular accounts. That the course of business between the parties was such, that Morrison was always the debtor in the spring, and Frink always his debtor in the fall. That shortly before Morrison died, he sent deponent to his lawyer, Edward P. Clark, to obtain a satisfaction-piece on the judgment in this action: that Clark obtained such satisfaction-piece from Frink, and deponent saw it in Clark's possession, but he refused to give it up to Morrison.

The affidavit of Thomas G. Shearman stated that he had lent Frink $300 on February 15th, 1858, and that Morrison repaid the sum to him on February 26th, 1858. This was part of the amount omitted by mistake from the account stated.

It appeared that the mortgaged premises were about to be sold on the plaintiff's execution.

The affidavits produced by Edward P. Clark, who resisted the motion, tended to show that these payments were applied

by Morrison to special accounts, that more than the amount of the judgment was due to Frink, and that Clark had a lien thereon.

*James H. Storrs*, for Holyoake, the mortgagee.—I. The docket of judgment is in favor of Fink, not Frink, and is therefore void.

II. The execution was irregularly issued. Before the Code, a *scire facias.* was necessary. (Morton *a.* Croghan, 20 *Johns.*, 106.) And now an action of the same nature must be brought, the judgment-debtor being dead (*Code*, §§ 69, 428; Thurston *a.* King, 1 *Abbotts' Pr.*, 126; Cameron *a.* Young, 6 *How. Pr.*, 372; Jay *a.* Martine, 2 *Duer*, 654); even since the act of 1850 (Alden *a.* Clark, 11 *How. Pr.*, 209.)

III. The judgment is not and never was a valid lien: $9,315 were paid upon it before it was entered, and $2,000 a few days afterwards.

IV. When payments are made on general account, the law applies them to the oldest items. (Clayton's Case, 1 *Meriv.*, 572, 604, 608; U. S. *a.* Kirkpatrick, 9 *Wheat.*, 720, 737; Allen *a.* Culver, 3 *Den.*, 284; Dows *a.* Morewood, 10 *Barb.*, 183; 1 *Am. Lead. Cas.*, 282, 291; Truscott *a.* King, 6 *N. Y.* (2 *Seld.*), 147.)

V. A general payment is applied to a judgment in preference to a common debt (Pattison *a.* Hull, 9 *Cow.*, 747), especially where subsequent incumbrancers intervene. (Hadley *a.* Chapin, 11 *Paige*, 245.)

VI. It is never applied to a contingent debt where there is an actual one. (Baker *a.* Stackpoole, 9 *Cow.*, 420; Niagara Bank *a.* Rosevelt, *Ib.*, 409; Stone *a.* Seymour, 15 *Wend.*, 19, 24; 1 *Am. Lead. Cas.*, 277.)

VII. A judgment, once paid, cannot be kept on foot to cover new demands. (Truscott *a.* King, 2 *Seld.*, 147; Troup *a.* Wood, 4 *Johns. Ch.*, 228.) So with a mortgage. (Bank of Utica *a.* Finch, 3 *Barb. Ch.*, 293.) Part payment discharges the lien *pro tanto* (Marvin *a.* Vedder, 5 *Cow.*, 671; De La Vergne *a.* Evertson, 1 *Paige*, 181), and it cannot be restored by parol to the prejudice of third persons. (*Ib.*)

VIII. The court, by virtue of its general power over its own records, will interfere to remedy fraud, such as is here shown to

have existed in the manner of obtaining judgment. And it will do so on motion, directing an issue if the facts are doubtful. (Kendal *a.* Hodgins, 1 *Bosw.*, 659; Baker *a.* Binninger, 14 *N. Y.*, 270; Norris *a.* Denton, 30 *Barb.*, 117; Bridenbecker *a.* Mason, 16 *How. Pr.*, 203; Bonnell *a.* Henry, 13 *Ib.*, 142; Christie *a.* Bogardus, 1 *Barb. Ch.*, 167; Harrod *a.* Benton, 8 *B. & C.*, 217; Martin *a.* Martin, 3 *B. & Ad.*, 934.)

*Ira O. Miller*, for the plaintiff.

LEONARD, J.—The act of 1850 (ch. 295) does not, in my opinion, supersede the necessity of taking proceedings on the judgment, in the nature of *scire facias*, after the death of the debtor, wherein the heirs and terre-tenants shall be notified and have a hearing, if desired, before any lands of the deceased, upon which it is claimed that the judgment is a lien, shall be sold on execution.

The writ of *scire facias* is abolished by the Code, but it is quite plain that a more simple proceeding, as the codifiers supposed, was substituted.

The end or object to be attained for the purposes of justice, by *scire facias*, has not ceased to be required in some form. The proceeding before the surrogate, by the act of 1850, is not a substitute for *scire facias*.

There are no provisions for notifying heirs or terre-tenants, or making them parties to the proceedings before the surrogate, nor does the proper jurisdiction exist in the surrogate to administer a complete judgment co-extensive with that obtained by *scire facias*.

Terre-tenants may require that all the lands subject to the lien of the judgment be brought in and subjected to contribution, and perhaps to settle the order in which the lands of the deceased, subject to the judgment, shall be sold. (Morton *a.* Croghan, 20 *Johns.*, 106.)

A mortgagee is not, however, entitled to be made a party to such a proceeding.

I think the applicant here cannot, therefore, move to set aside an execution irregularly issued, for the want of proceedings in the nature of *scire facias*.

In the present case, a mortgagee moves to set aside such an

execution for the reasons referred to, and also moves to set aside the judgment whereon the execution has been issued.

The mortgagee alleges that the judgment was recovered on an offer of the defendant to allow judgment to be taken under section 385 of the Code; that it was fraudulently created as a cover for the property of the defendant; that a large part of the note, on which the judgment was obtained, was paid before the offer was made or the judgment docketed; that subsequent payments were made by defendant on general account, which ought to be applied to the oldest demands, and that this judgment was thus wholly extinguished.

Certain receipts, which are produced by the representatives of the defendant, appear to warrant the claim for the application of payments.

The receipts are, however, subject to explanation, and the plaintiff states that these payments were, by agreement with defendant, applied to other subsequent transactions, and that the whole amount of the judgment, and even a still larger sum, is actually due to him from the deceased defendant.

I do not think this question ought to be determined on affidavits or by motion; involving, as it does, conflicting evidence, which will require appellate tribunals to look into and examine the facts proved, and ascertain the weight of evidence applicable in the various aspects of the case and questions involved, to sustain the order which the court might consider it proper to make on this motion.

Without expressing any opinion in respect to the merits on this branch of the motion, I shall direct an order to be entered denying the motion, with $10 costs of opposing, without prejudice to the right of the applicant to institute an action, and obtain an adjudication of his rights as against the judgment in question.