### In re SALISBURY'S ESTATE.

*(Surrogate's Court, Cattaraugus County. May 28, 1889.)*

1. EXECUTOR'S ACCOUNTS—DECREE—OPENING AND VACATING—LACHES.
Where a decree settling executors' accounts, and directing the payment of a certain sum to one of the executors, was entered in 1866, and no appeal was taken therefrom, and in 1874 such executor died and his administrators were promptly appointed, a petition filed in 1888, seeking to vacate such decree on the ground of fraud, is barred by laches, where petitioner might have known the facts alleged as evidence of fraud shortly after the executor's death.

2. Same—Fraud—Evidence.

Under Code Civil Proc. N. Y. § 2481, subd. 6, giving a surrogate's court the same power to vacate or modify a decree as is possessed by the supreme court to set aside a judgment, a decree settling executor's accounts, and awarding a certain sum to the executor as commissions, entered in 1866, will not be set aside on allegations that the executor testified at the hearing that he had no money belonging to the estate except as set forth in his account; that in 1865, and continuously thereafter, there was a large sum in bank to the executor's individual credit; and that, prior to his appointment, he had been bankrupt, and had done nothing since to earn money,—as such allegations do not show fraud.

Petition by William H. Bard against the administrators of William Elliott, deceased, to vacate a decree entered in 1866, adjusting and settling accounts of executors of the estate of one Lorentus Salisbury, deceased, and distributing funds and property on hand among next of kin.

*C. D. Van Aernam,* for petitioner.　　*W. W. Waring,* for defendants.

Spring, S.　In 1847 the surrogate of Cattaraugus county issued letters testamentary to William Elliott and two others, as executors of the last will and testament of Lorentus Salisbury, deceased. The estate, which was a large one for those times, was managed in the main by Elliott, and was under his management and control for many years. In 1857, in proceedings had for that purpose, a final settlement of the accounts of the executors was had in the surrogate's court, and a decree was entered at that time adjusting and settling the accounts, and determining the amount with which said executors were chargeable. In 1866 two accounts were filed and two decrees entered adjusting and settling the accounts of the said executors, and directing distribution of the funds and property on hand among the next of kin, which was made in accordance therewith. The will of testator directed his executors to support and maintain, out of his property, one Emily Talbot during her natural life, and in pursuance of this power $1,200 of the fund committed to the executors were set apart for this purpose, and the income therefrom paid to her until her death, which occurred about one year ago. In the decree of 1866 this sum of $1,200 was directed to be paid to Elliott, to apply on his commissions as executor, he having consented to this disposition. In December, 1874, Elliott died intestate, and administrators of his goods, etc., were duly appointed by the surrogate of Cattaraugus county, and at once assumed the duty and burden thereof. Upon the death of Miss Talbot, William Smith, the sole surviving executor of Lorentus Salisbury, deceased, filed his petition for judicial settlement, and brings into court for distribution the $1,200, the *corpus* of which had been directed to be paid to Elliott, as above stated. The administrators of Elliott appear, and claim the money in pursuance of such decree. One of the next of kin and legatees of Lorentus Salisbury was Ann Salisbury, subsequently Ann Bard, the wife of the petitioner, William H. Bard. Mrs. Bard was a minor at the time of the settlement in 1866, but shortly after attained her majority, and died in 1873, making her husband her executor and residuary legatee. Mr. Bard filed his petition, claiming this sum of $1,200 should be distributed among the next of kin of Salisbury, deceased, and bases his claim upon an allegation in his petition, setting forth that in 1866 Elliott testified before an auditor, to whom his accounts were submitted for examination, that he had no money belonging to the estate, except such as appeared in his account; that, as the petitioner claims, there was in 1865, and continuously thereafter, a deposit in the Lake Shore National Bank, at Dunkirk, or its predecessor in business, of $1,615.61, in the individual name of Elliott, and a further credit to him of interest of $96.63. The petitioner claims this money in fact belonged to the Salisbury estate, alleging that prior to his appointment as executor he had gone through bankruptcy, and was engaged in no business during the years of his executorship to earn or accumulate any money, and charges him with fraud and perjury in procuring the entry of decree in 1866. I do not think the petition sets forth facts

sufficient to justify interference with the decree of 1866, awarding this sum of $1,200 to Elliott in payment of his commissions. The charge of fraud is predicated upon a mere inference, to-wit, that Elliott did not own or earn the deposit in the Lake Shore National Bank. This, certainly, would not be sufficient to convict Elliott of so grave a crime as embezzlement, simply because it was not generally known that he possessed this money, and that fact cannot militate against his honesty and truthfulness. A surrogate's court has the same authority to vacate or modify a decree that the supreme court possesses to set aside a judgment. Section 2481, subd. 6, Code Civil Proc. A supreme court would not set aside a judgment for fraud unless the fraud was clearly established, certainly by proof sufficient to carry conviction that the end sought to be gained by the moving party would be obtained. *Frink* v. *Morrison*, 13 Abb. Pr. 80; *Hill* v. *Northrop*, 9 How. Pr. 525; *Smith* v. *Nelson*, 62 N. Y. 286–288; *Olmsted* v. *Long*, 4 Dem. Sur. 44.

The petitioner is guilty of very gross laches in making his application to open the decree. No appeal was taken from the decree of the surrogate, entered in 1866. Elliott died in 1874. Administrators of his estate were promptly appointed, and the matters were permitted to remain undisturbed until this long time had elapsed. There is nothing in the petition excusing this delay. For aught that appears, the petitioner and next of kin may have known of the deposit in the bank shortly after Elliott's death. The courts refuse to open a decree or set aside a judgment after a considerable time has elapsed since their entry. *Strong* v. *Strong*, 3 Redf. Sur. 477; *Corwithe* v. *Griffing*, 21 Barb. 9. There was nothing improper in the court setting apart this sum of $1,200 to pay Elliott's commissions, if he saw fit to consent to the arrangement. He alone is the one injured by this method of procedure. A decree will be entered adjusting and settling the account of the surviving executors, as filed, and directing the payment of the $1,200, less commissions and expenses, to the administrators of William Elliott, deceased, March 14, 1889.