## THE PEOPLE *on rel.* ROBINSON *a.* FERRIS.

*Supreme Court, Fourth District; General Term, January,* 1863.

REFERENCE.—APPEAL IN HIGHWAY CASES.—POWER TO REOPEN HEARING.—NOTICE.

Where referees, appointed to hear and determine an appeal in highway proceedings, have heard both parties, and duly closed the hearing, and have entered upon the task of forming a determination, they have no power to entertain a motion of third persons to open the cause for a further hearing, and for the reception of evidence impeaching the original testimony, and adding to the weight of the original evidence.

Such referees are, like other inferior and subordinate officers and tribunals that are creatures of statute, to be confined to powers expressly conferred or such as are necessarily incident to express powers.

In a case where they have power to open the hearing, the same notice should be given as in the case of the first hearing.

Common law *certiorari* to review the decision of referees on an appeal in highway proceedings.

The defendants, Benjamin Ferris and others, were appointed by the county judge of Washington county referees to determine an appeal brought by Gilbert Robinson, the relator, from the determination of the commissioners of highways of the town of Argyle in laying out a highway through the lands of the relator.

No question was made as to their appointment, or as to the regularity of their acts, until after they had heard the proofs and allegations of the parties. At the time of hearing these proofs, the parties and their counsel present, after taking certain testimony, agreed upon the number of witnesses to be sworn, who were accordingly sworn and examined by the parties in pursuance of such agreement, and the commissioners and appellant then submitted the matter to the referees for their decision. This was July 15, 1857; no adjournment was asked for by either party for the purpose of offering more testimony; but the referees adjourned indefinitely as to time, but fixing Sandy Hill as the place to meet to make their decision, and two days afterwards, to wit, July 17, 1857, did meet for the purpose of deciding the same. Upon consultation two of the referees were of opinion that the opening of the road was not of sufficient importance to justify the expense of opening it.

*One referee came to no conclusion for want of sufficient evidence.* It was then agreed between two of them, that one, to wit, Weston, should draw up a decision in blank, and that Ferris, the other referee of the same opinion, was to take the paper and fill certain blanks therein; but it was not to be signed, nor any final decision made until another meeting should be had on an adjourned day. Weston drew up a blank decision in form reversing the determination of the commissioners, and they adjourned. Ferris took the said blank decision, filled it up, and signed it before the adjourned day arrived; but on what day does not appear. Several of the inhabitants of the town of Argyle appeared before the referees at Sandy Hill, and upon affidavits setting forth facts and reasons for so doing, applied to the referees to have the matter opened, and take further evidence in the matter, upon the

merits. At the adjourned day last before mentioned, the referees again met, and then *two* of the referees refused to decide the appeal, and adjourned to a further day, and then information was given to the relator's son of the application that had been made to open the hearing.

The referees again met, July 24, 1857, and William D. Robinson, the relator's son, who appeared for him, requested them to suspend their decision upon such motion till the 7th of August next, to give him time to interpose legal objections to granting such application.

Their decision was postponed to August 7, on which day the relator by his counsel objected to a further *hearing*, and insisted that they could not entertain such application without affidavits, &c.  Two of the referees then decided that such affidavits should be presented; the commissioners' counsel then read affidavits of five inhabitants of Argyle in favor of the application; the relator's said son then asked for time to consider whether he would furnish counter affidavits; the referees then again adjourned to August 14, at which time the parties agreed that the time for this purpose should be further extended to October 10, on which last day the relator's said counsel objected to the further hearing of the said appeal; *First.* That they had no right; and, *Second.* That this was not a proper case to exercise it, and he read the affidavits of eight persons for that purpose.

The counsel for the commissioners then proposed to read affidavits in reply, which was objected to, but allowed by the referees, and the affidavits were read; arguments against allowing the application and in favor of it, were then made, and another adjournment, to October 19, was made to allow the relator's counsel to furnish authorities in reply, which being furnished in writing on the last day, two of the referees, all being present, decided to grant a further *hearing* of the appeal, and appointed November 25, 1857, at a certain place; and written notice was given to the relator's counsel, but *no other notice* was given to the relator, on which last-mentioned day, on account of sickness of the relator's counsel, a further adjournment was had till December 15, 1857.  On this day all the referees being present, and the counsel for the parties being present, the relator's counsel again objected before the said

referees to receiving any further evidence on the part of the commissioners; on the ground, that the matter had been before the referees, testimony heard and closed, the matter submitted to them for consideration, and having been considered and passed upon by them, they had no power to reopen the case and receive further testimony.

These objections were overruled by the referees, and the relator excepted; the commissioners then proceeded, and offered new evidence.

The case was again adjourned from time to time; the relator's counsel remaining and cross-examining witnesses, raising objections, and calling and examining witnesses on his side. Proofs were again closed January 16, 1858; various meetings of two of the referees, and adjournments, were had until January 26, 1858, when all three were present, two of whom decided to affirm the determination of the commissioners, Ferris refusing to sign the decision; and the decision was filed in the town clerk's office of Argyle, January 29, 1859. This decision being considered as defective in form, inasmuch as it did not show upon its face that all the referees were present, or had met at the time it was made; the two referees who did sign it afterwards on February 5, 1858, without concurrence, consultation with, or notice to the other referee, filed a supplemental order or statement showing that all the referees were present, and they annexed to it their former decision.

The proceedings now came before the Supreme Court at Schenectady, upon a *certiorari* issued at the suit of the appellant.

*W. G. Paris and J. S. Coon,* for the commissioners.

*A. L. McDougall and Timothy Cronin,* for relator.

By THE COURT.—POTTER, J.—The referees in this cause acquired jurisdiction of the matter by their appointment, and they then possessed all the powers that were formerly possessed by three judges of the Common Pleas of the county under the provisions of title 1, act 4, chap. 6, part 1 of the Revised Statutes. It is necessary, therefore, to look at the statute referred to in order to see what powers such three judges did

possess. By section 87, 1 Rev. Stat., 518, notice was required to be given to the commissioners, and to one or more of the applicants for the road, specifying the time and place at which the judges (now referees) will convene to hear the appeal; this was done. By section 88, p. 519, eight days' notice was required to be given of the time mentioned therein to the commissioners and applicants, and the manner of service is specified.

Of all this there is no complaint. By section 89 it shall be the duties of the judges to convene at the time and place mentioned in the notice, and to hear the proofs and allegations of the parties. They shall have power to issue process to compel the attendance of witnesses, and may adjourn from time to time as may be necessary. All the powers expressly conferred to direct or control the action of the referees upon the hearing or the mode of conducting the appeal are above stated. Every other power which they can exercise must be such as is incident to their express powers. The effect of their action within their powers need not at this place be referred to. It is their duty to determine, and they are empowered to compel the attendance of witnesses, about which no question is raised, and all power conferred beyond this is that they may adjourn from time to time as may be necessary. So far as adjournments were concerned there was no limit so long as adjournments were necessary, which as a matter of discretion with the referees they had most undoubted powers to determine; but adjournments for further hearing were no longer necessary, by the acts of the parties, and by their own. When the case had been submitted there was an end to the hearing. It was then left with the referees for decision. The adjournments for the decision were, perhaps, as necessary as adjournments for the hearing, and the power to adjourn, I have no doubt, still remained as a necessary incident of the power to decide.

They then entered upon the duty of deciding. They, or a majority of them, agreed upon some things. They adjourned to meet again; a form of decision reversing the determination of the commissioners was prepared by one referee and signed by another in accordance with the general views of these two of said referees, to be presented at the next meeting then appointed for the decision of the case.

These facts though they fall short of constituting a final de-

cision, and such decision it was agreed should be deferred, are stated merely to show that the referees had then in their own minds closed the hearing, and entered upon that part of their duty which required them to decide upon the matter submitted to them upon such hearing.

Between these two periods, that is, before the next day of meeting, several inhabitants of the town of Argyle not parties recognized by the statute as having a right to be heard as parties, procured to be held a meeting of the referees, not on an adjourned day; and then made an application to have the hearing opened, using arguments and reasons calculated to influence the action of the said referees. This, though perhaps not so intended, was a most officious, improper, and meddlesome interference with the rights of parties not present, and with the opinions of a body acting upon their oaths, entrusted with the performance of solemn duties, and with the decision of important interests of the citizens.

The courts should never look but with disapprobation upon such direct interference with the actions of bodies upon whom the law has cast the power of disposing of or affecting the property or interests of others. A justice of this court, or any other, would frown upon any such attempt upon him, and would punish as for contempt any such interference with a jury; and referees in such a case are not an exception. And though good faith may have been the moving principle, the precedent is dangerous and should not be sanctioned or tolerated, and the fact that one of the referees who before that, at the last regular meeting, had drawn up a written decision of the case, had at the next adjourned meeting so changed his mind as to agree and deliberate upon the application so improperly made, is far from proving that such interference did not influence the decision. Though the return does not show it, the opinion of the referees may have become known outside, and if applications may be based upon such a state of things, a case is never settled or submitted, though the faith of the parties may be pledged to a submission. Interested individuals outside will not fail to open litigation so long as either party are informed that weak points may be strengthened; that the testimony of some witness should be impeached; that the weight of evidence against him before the referees might be changed. Such motions will be

the order, and endless litigation the result, and if upon another hearing the weight is on the other scale, another opening of the case will be applied for, and for the same reason should be, but may not be granted; and this court would possess no power to correct the abuse.

At this period of time the real question in the case arises, the question of power.

The question of necessary adjournments for the hearing having once been closed—all the discretion granted to the referees for that purpose had once been exercised and exhausted; the necessary adjournments for the purpose of deciding the case they doubtless still possessed power to make, but even that discretion had now come to an end—by this new view of the case so improperly brought before the referees.

Notice of this application of citizens pending before the referees was given to the son of the relator, and at a future adjourned meeting this son appeared and requested a withholding of their decision upon said application, to enable him to interpose legal objections, which being granted, he did interpose his objections to their entertaining a motion for a further hearing.

The objection was overruled by two of the referees, and they then and there entertained a motion upon affidavits, without the previous service of copies thereof; but they then adjourned to enable the relator to determine whether he would present counter affidavits, and for reasons of convenience to parties several adjournments were had without any action; and at the next meeting the relator's son again urged his objection to the power of the referees to open the hearing, and finally, this being overruled, he read affidavits to show that it was not a proper case for the exercise of such a power. Replying affidavits were then admitted. All these affidavits are returned with the writ.

By reference to these affidavits it is seen that those read in behalf of the commissioners and applicants for the road, are affidavits impeaching the evidence offered on the hearing on the part of the relator, and cumulative evidence on the other side. The referees decided the motion in favor of granting a further hearing. The question now fairly arises:

Does the power granted by the statute authorize this pro-

ceeding by a body known in law as one of inferior and limited jurisdiction?

Is the power to hear and decide such a motion necessarily incident to the power granted " to adjourn from time to time as shall be necessary?" Is it absolutely necessary to the due administration of justice that they should exercise such power? As no precedent can be found in the books of authority, no rules regulating such a practice;—as these officers possess no powers by implication, but are like all other inferior and subordinate officers and tribunals that are mere creatures of the statutes, I think they are confined to the powers expressly conferred, or such as are necessarily incident to such conferred power, and, in all proceedings which may deprive a party of his estate, they are to be held to a strict construction of the statute. I have not been able to see in the features of this case that it is one that requires to be made an exception to the general rules, and to these long established safeguards to property.

It is not necessary to say in deciding this case that there are no circumstances that would authorize such referees to open a case for a rehearing if by accident or mistake one of the parties had been deprived of any hearing whatever, or even had but a partial hearing. It may be that such a power is incident to the power granted, and absolutely essential to the due administration of justice, as accident and mistake will occur where no human foresight can guard against it; and when fair notice from the party asking the relief, to the other, who was the one in interest, with the grounds upon which it is asked, is furnished. But that is not this case. This case had been heard upon its merits on behalf of the parties who have a right to be heard, and upon the advice of counsel, and the duty of deciding had been entered upon by the referees; and then, on account of no accident, or mistake, or default, but because parties not recognized as parties to the proceeding—either because they had heard or had been informed, or because they suspected the weight of evidence was against their wishes—asked to have the case opened. For what? To impeach some of the testimony standing in their way, and to add to the weight of evidence on the other side. A court of original jurisdiction would have denied such a motion if they did not rebuke the application.

Such a power as has been here exercised is not within the

contemplation of the statute, and would be a dangerous one to intrust to such a body. There is no case or precedent cited, and I have not been able to find a reported case, where it has been exercised. The powers of referees for the trials of civil causes commenced in the courts, and whose actions and conduct have ever been under the control of the courts, have never until recently been extended so far; and being subject to review by the court, are not authority for this. The only case that I can find in the books that approaches to this is that of Pew *a.* Hastings (1 *Barb. Ch.*, 452), where it was held the surrogate had power to open a decree taken by default, in consequence of a mistake or accident.

But the chancellor in that case puts it on the true ground. He says, " the question is not whether a surrogate who has heard and decided a case upon the merits has power to grant a rehearing, so as to give one of the parties the benefit of a re-argument, or the right to bring forward new evidence to sustain his side of the cause, but whether he has the power to open a decree taken by default, in consequence of a mistake or accident, by which one of the parties has been deprived of any hearing whatever." I think upon the whole it is sufficient to say that in this case, and under the circumstances, the referees exceeded their authority in hearing this motion and in opening the case ; and that in opening the hearing, the necessary notice of the time and place at which the referees will convene to hear the appeal as required by section 87 of the act 1 Rev. Stat., 518, 519, was not given.

The same formalities should be repeated when the rehearing was ordered, as at first. They therefore lost jurisdiction of the case.

I shall not discuss the legal effect of the decision filed, which on its face shows only two of the referees to have been present, nor the subsequent act of two of them in filing a supplemental report, without consulting or notifying the third.

I think the acts of the referees should be vacated and set aside ; that the order appointing the referees should be set aside ; and that the appeal stand to be determined by a new board to be appointed.