PEW and others *vs.* HASTINGS, ex'r, &c.

A surrogate has the power to open a decree taken by default, and in consequence
of a mistake, or an accident.
Such a power is absolutely essential to the due administration of justice.

THIS was an appeal from a decision of the surrogate of the
county of Washington. The appellants, as legatees under the
will of Anna Hastings, deceased, cited the appellant, as her ex-
ecutor, to account. The executor, wishing for a final account,
obtained the usual citation for all persons interested to attend
the settlement of his account; and the proceedings were ad-
journed to the 25th of August. But the proctor for the legatees,
by mistake, entered the adjournment in his register as having been
to the 27th of August, and wrote to their counsel, who resided
at Utica, that the hearing was to be had on the last mentioned day;
and neither the proctor or counsel, or their clients, were aware of
the mistake until the 26th of August. On that day the counsel
arrived at Salem, where the hearing before the surrogate was to
have taken place. And he then learned that the account had been
settled before the surrogate, *ex parte,* the day before; but that
the sentence, or decree, of the surrogate had not yet been drawn
up and entered. He thereupon applied to the executor, and to his
counsel, and informed them of the mistake, and requested them
to consent that the default might be opened, and that his clients
might have an opportunity to be heard; but they declined
doing so. He also applied to the surrogate to allow him to
appear and oppose the allowance and settlement of the account
But the surrogate did not feel authorized to do so; and before
regular notice of an application for that purpose could be given
to the adverse party, the surrogate had entered the sentence, or
decree, upon the final settlement of the account of the executor,
in the minutes of the court, as of the 25th of August. As soon
as the necessary papers could be prepared and served, the appel-
lants gave notice of an application to open their default and the
sentence and decree founded thereon, and that they might be
permitted to come in and contest the accounts. Upon the hear-

ing of that application, it was denied by the surrogate; on the ground that he had no jurisdiction, or right, to open a regular order, or decree, made upon a default before him, and to let the parties in to be heard upon the merits. From that decision the legatees appealed.

*Ward Hunt*, for the appellants.

*C. Stevens*, for the respondent.

THE CHANCELLOR. The affidavits and account which were before the surrogate, upon this application, render it highly probable that great injustice will be done to the appellants if they are deprived of an opportunity to be heard upon the settlement of the account of the executor. The fact that the whole amount of the bond and mortgage, with interest thereon, was inventoried as due in July, 1843, when, if the account claimed by the father of the executor is correct, the executor must have known there was nothing whatever due upon the bond and mortgage at that time, renders it probable that the whole of that account was not justly due. Besides, this account does not appear to have been presented by the father to his son, or sworn to, until about the time these proceedings were instituted; and more than six years after the death of the testatrix, and eleven years after some part of the account is stated to have accrued. It was not a case to be disposed of on the mere ex parte affidavit of the father, not only as to the fact of the services having been performed for the testatrix, but also as to the correctness of the valuation which he had made of such services. The only real question in this case then is, whether the surrogate had the power to open the default, and let the appellants in to contest the account of the executor, and give them an opportunity to show that the allowance of the account of the father was improper and collusive.

The practice of the surrogates' courts was originally derived from the practice of the ecclesiastical courts of England, in testamentary matters; which courts there have the ordinary inci-

dental powers of the court of chancery, and of the courts of common law, in regulating the proceedings before them, so as to prevent a failure of justice in consequence of mistakes and accidents which human foresight is not always able to guard against. (*Shanessy* v. *Allen*, 1 *Lee's Eccl. Rep.* 9. *Cargill* v. *Spence*, 3 *Hagg. Eccl. Rep.* 146.) The revisers, however, attempted to regulate the practice in surrogates' courts entirely by statute. The revised statutes, accordingly, after stating the general powers and jurisdiction of the surrogates, contained this provision: " which powers shall be exercised in the cases and in the manner prescribed in the statutes of this state, *and in no other; and no surrogate shall, under pretext of incidental power, or constructive authority, exercise any jurisdiction whatever, not expressly given by some statute of this state.*" (2 *R. S.* 221, § 1.) It was afterwards found, however, that the exercise of certain incidental powers by courts was absolutely essential to the due administration of justice; and that the revisers and the legislature had not, by their care and foresight, been able to take the case of these surrogates' courts out of the operation of the general rule. So much of the provision of the revised statutes above referred to, therefore, as restricted the power of the surrogates, and deprived them of the right to exercise such powers as were incidental to other courts, were subsequently repealed. (*Laws of* 1837, *p.* 536, § 71.)

The question here is not whether a surrogate, who has heard and decided a case upon the merits, has the power to grant a rehearing, so as to give one of the parties the benefit of a re-argument, or the right to bring forward new evidence to sustain his side of the case, but whether he has the power to open a decree taken by default, in consequence of a mistake or accident by which one of the parties has been deprived of any hearing whatever. This last power is one which is absolutely essential to the due administration of justice; as defaults of the kind referred to must frequently occur where no human foresight could have anticipated and guarded against the event by which the default was occasioned. I think, therefore, the surrogate erred,

in this case, in supposing that he had not the power to open the decree which had been taken by default.

The order of the surrogate which is appealed from, is reversed; and his sentence or decree settling the account of the respondent must be opened, or vacated. The proceedings must be remitted to the surrogate, with directions to assign a time for the parties to be heard before him by their counsel, and to produce their testimony; and that he require such notice of the time and place of hearing to be given by the proctor of the appellants, to the respondent or his proctor.

If the respondent had consented to waive the default, upon being informed of the mistake which had occurred, he would have been entitled to the costs which had been incurred in consequence of such default. But under the circumstances of this case I shall not give costs to either party, as against the other, either upon the application to the surrogate, or on the appeal from his decision upon that application.(*a*)

(*a*) Affirmed on appeal to the court for the correction of errors, December, 1846.