SIPPERLY *v.* BAUCUS *et al.*

The effect of the repeal in 1837 (ch. 460, § 71), of the restrictive clause in respect to the jurisdiction of surrogates' courts (2 R. S., p. 221, § 1), is to restore to such courts the incidental powers possessed by them previous to the Revised Statutes.

A surrogate has the power to open a decree made by him on the final accounting of an administrator, and to require a further account in respect to a sum received by him with which he had charged himself, as $14.80 instead of $1,480.

There is no positive limitation of the period in which such application may be made, and the lapse of four years does not of itself import laches.

APPEAL from an order of the Supreme Court, at a general term, reversing an order of the Surrogate of Saratoga county, by which the surrogate opened his decree, made on final accounting by the administrators of the estate of Martin M. Stover, so far as concerned the respondent, Sipperly, and directed him to render a further account.

The facts were these: Martin M. Stover died intestate in June, 1849, and in July of the same year, Martin Sipperly, Jacob A. Snyder and Elizabeth M. Stover, were appointed administrators of his estate. In April, 1851, the administators petitioned for a final account, which was had, and after hearing the proofs, a final decree was entered by the surrogate in September of that year, and an order made in December, distributing the estate. In September, 1855, the appellants, upon allegation of error in the accounting, petitioned the surrogate, praying that the decree might be opened as to the respondent, and he be charged with the error amounting to over $1,400. It was made conclusively to appear that the sum of $1,480, received by the respondent, as administrator, was accounted for as $14.80.

*John H. Reynolds,* for the appellant.

*William A. Beach,* for the respondent.

JAMES, J. The questions presented by the case for consideration, are, 1st. The power of the surrogate to open the decree; 2d. Whether or not the application was in time.

Before the adoption of the Revised Statutes, the powers and jurisdiction of surrogates' courts were undefined, the laws respecting them and the subjects of their cognizance were defective, ambiguous and irreconcilable, and the practice and decisions uncertain and contradictory. The Revisers of our Statutes undertook to provide a remedy for those evils by accurately and strictly defining the purposes and ends of the court, and the objects and extent of its authority. To that end the first section of the Revised Statutes relative to surrogates'

courts declared as follows: "which powers shall be exercised in the cases, and in the manner prescribed by the statutes of this State, and in no other; and no surrogate shall, under any pretext of incidental power or constructive authority, exercise any jurisdiction whatever, not expressly given by some statute of this State." (2 R. S., 221.)   A few years' experience demonstrated that the limited and precise terms of the above statute were incompatible with, and inadequate to, the business necessities of the court.   As was said by Chancellor WALWORTH, in *Pew* v. *Hastings* (1 Barb. Ch. R., 454), "it was found that the exercise of certain incidental powers by courts, was absolutely essential to the due administration of justice; and that the Revisers and the Legislature had not, by their care and foresight, been able to take the case of these surrogates' courts out of the operation of the general rule.  Accordingly the Legislature, in 1837, repealed the restrictive part of the foregoing clause of the Revised Statutes. (Laws of 1837, p. 531.)   Since that repeal surrogates' courts have continually exercised powers not enumerated in the statutes, and there are several reported cases sustaining and commending such acts.   In *Vredenburgh* v. *Calf* (9 Paige, 128), decided since the repeal of the prohibitory provisions of the Revised Statutes, it was held that where an order had been entered which the surrogate had no power to enter, he not only had the right, but it was his duty to set it aside as irregular.   In *Skidmore* v. *Davies* (10 Paige, 316), it was expressly stated that the remedy of a party aggrieved by an irregular *ex parte* order made by a surrogate was to apply to the surrogate to vacate or set it aside, and not by appeal.  To the same effect is the case of *Proctor* v. *Wanmaker* (1 Barb. Ch. R., 302).  *Pew* v. *Hastings* (*supra*), is a still stronger case.   Upon a day set for accounting, through mistake no one appeared to oppose, and the accounting was had *ex parte*.   After decree entered, application was made to open the default and the sentence and decree founded thereon, that the legatees might come in and contest the averments.   The motion was denied by the surrogate on the ground that he had no right or jurisdiction to open a regu-

Sipperly *v.* Baucus.

lar default, or decree, and to let the parties in to be heard upon the merits. On appeal the Chancellor reversed the order and held that the surrogate had the power to open the decree, and that such a power was absolutely essential to the due administration of justice. In another case, it was held that if an order was made at a particular time, which was then authorized, the surrogate had a right afterwards to enter it *nunc pro tunc.* (*Butler* v. *Emmett,* 8 Paige, 12, 21.) Except when restricted by the terms of the statute, surrogates' courts now possess substantially the same powers as before the Revised Statutes, the effect of the amendment of 1837 having been to restore to them the powers which were incidental and necessary to the proper discharge of the duties conferred upon them. Although wherever the statute speaks it must be followed and obeyed, yet when a proper occasion arises to invoke the incidental power of the court, the surrogate should not decline the exercise of the power because the statute is silent on the subject. As a question of incidental power the court was fully authorized to open the decree in this case, unless such accounting is made final and conclusive by some statute. The only statute bearing upon the question declares that the final settlement of an account, and the allowance thereof by the surrogate, &c., shall be conclusive evidence against all creditors, legatees, next of kin of the deceased, and all persons in any way interested in the estate, upon whom the citation shall have been served, &c., of certain specified facts, and of no others, as follows: 1st. That the charges made in such account for moneys paid to creditors, to legatees, to the next of kin, and for necessary expenses, are correct; 2d. That such executor or administrator has been charged all the interest for moneys received by him and embraced in his account, for which he was legally accountable; 3d. That the moneys stated in such account as collected, were all that was collectible on the debts stated in such account at the time of the settlement thereof; 4th. That the allowances in such account for the decrease of the value of any assets, and the charges therein for the increase in such value, were correctly made." The object of this statute was to make

certain things therein specified final; the error complained of in this case is not of any matter included within the specifications of the above section, and the question before us is in no way embarrassed by it. I am, therefore, of the opinion that the decree in this case was not such a final adjudication as to divest the surrogate of control over it.

The next and only other question is, did the application to open the decree come too late. It had stood over four years. It was held in *Rogers* v. *Rogers* (1 Paige, 188), that " a delay of a year and six months in applying to the Chancellor to correct a mistake made in drawing up a decree was too long, and leave was refused. In that case the complainants were apprized of the supposed mistake in the decree when the objections were made to the draft of the Master's report, and by the exceptions to the report and the argument of those exceptions. Of course it was the duty of the complainants to have immediately applied, and by a delay of eighteen months they were properly charged with laches; but in the present case there is nothing to show when the alleged error was discovered. For aught we can know, the application in the case may have been promptly made on discovery of the error. There is no positive limitation of the period in which such an application may be made, and in the absence of laches, we cannot say, as a matter of law, that the application was not in time.

We think the application was, so far as appears to this court, made in time: that the surrogate had jurisdiction to entertain it, and power to grant the order; and that he did right in so doing.

The order of the general term is reversed, and that of the surrogate affirmed, with costs.

All the judges concurring,

Ordered accordingly.