JAMES CAMPBELL, appellant, *vs.* JOHN W. THATCHER and others, executors &c., respondents.

The incidental powers possessed by surrogates' courts previous to the Revised Statutes, and taken away by those statutes, (*Part* 3, *chap.* 2, *title* 2, § 1,) were restored by the act of the legislature of 1837, (*Laws of* 1837, *ch.* 460, § 71,) repealing that section of the Revised Statutes.

Although a surrogate, after parties in interest have been represented at a hearing before him, and final sentence or decree has been given, has no general power of opening or reversing such sentence or decree, on the ground that he erred as to the law, or decided erroneously upon the facts, he may open such decree for the purpose of correcting any mistake therein, the result of accident.

Executors employed counsel to make out their account for settlement, and left with him their vouchers for that purpose. He made up the account, omitting, through oversight, to credit the executors with a payment of $500. The error was not discovered until the account was presented, and then, believing that the amount would be allowed to them on the balance known to be in their hands, the executors did not ask to have the account corrected, but allowed the error to pass. The surrogate having made a final decree declaring the account finally settled, the amount in the executors' hands, and directing as to its disposition, which decree was duly entered, one of the executors applied to the surrogate, by petition, asking that the decree be opened and he be credited with such payment of $500, and an error of $50 which the residuary legatee had consented to allow, and deduct from the amount in the executors' hands. *Held* that the transaction might be treated as a mistake or oversight, coming within the principle laid down in *Sipperly* v. *Baucus,* (24 *N. Y. Rep.* 46,) and within the incidental powers possessed by surrogates' courts; and that consequently the surrogate did right in opening the decree and correcting the error complained of.

Campbell *v.* Thatcher.

THIS is an appeal from an order of the surrogate of Montgomery county, opening a decree entered on a final accounting by the defendants, as executors &c. of Archibald Campbell, deceased; and also from so much of the corrected decree as directs that the respondents be credited with the sum of $500 not allowed in the decree.

The respondents were the executors of the will of said Archibald Campbell. On a citation from the appellant they appeared before the surrogate, on which occasion they presented their accounts, with vouchers, showing a balance in their hands of $1686.67. On the 10th of February, 1863, the surrogate made a final decree, declaring the account finally settled, the amount in the executors' hands, and directing its disposition, which decree was duly entered.

September 22d, 1863, one of said executors applied to the surrogate, by petition, asking that said decree be opened, and he be credited with a payment of $500 and an error of $50. The petition stated an error in such settlement of $50, which the respondent, sole residuary legatee, consented to allow and deduct from the amount in the executors' hands. The petition further stated, that in making up the account for settlement, there was omitted an item of $500, paid to the sole residuary legatee June 7th, 1860, for which they held a receipt, and which had not been allowed; that the omission was discovered when the account was presented, but believing it would be allowed them, and credited on any balance found in their hands going to said legatee, they did not deem it necessary to correct it, or present their receipt, until the amount going to said legatee should be determined; that since entering said decree, said legatee has refused to allow said sum of $500 to be deducted from the amount going to him, but has caused execution to be issued for the full amount of said decree.

In answer to said petition its claim is denied, and it is

---

Campbell *v.* Thatcher.

---

asserted that the $500 was included in a receipt for $900 allowed on said settlement.

On March 28th, 1863, the appellant filed and served on the respondent a stipulation in writing, consenting that said decree be modified by allowing the $50; but no modification was made.

On the 12th of October, 1863, the parties appeared before the surrogate, and the appellant insisted "that the decree having been filed and docketed in the county clerk's office, execution issued thereon and still in the hands of the sheriff, the surrogate had no jurisdiction to entertain an application to open said decree, it being a final decree." The objection was overruled, and an order made opening the decree.

Afterwards a hearing was had upon the fact whether or not the $500 was included in the $900 receipt allowed on the former hearing, which was found against the appellant, and December 20th, 1863, a decree was made by said surrogate allowing said sums of $50 and $500, and decreeing the balance in the hands of said executors to be $1136.67, instead of $1686.67.

*D. P. Corey,* for the appellant.

*S. P. Heath,* for the respondents.

*By the Court,* JAMES, J. It was held by the Court of Appeals, in *Sipperly* v. *Baucus,* (24 *N. Y. Rep.* 46,) that the effect of the act of 1837, (*chap.* 460, § 71,) which in part repealed section 1 of part 3, chapter 2, title 1, of the Revised Statutes, was to restore to surrogates' courts all the incidental powers possessed by them previous to the Revised Statutes.

What were the powers of surrogates' courts has been very clearly pointed out by Judge Daly, of the New York common pleas, while acting as surrogate in 1862, in

Campbell *v.* Thatcher.

a very learned and elaborate opinion delivered in the matter of *Joseph W. Rink.* They were: To take proof of the execution of last wills and testaments, and admit them to probate; to grant letters testamentary and of administration; to swear executors and administrators to the truth of the inventories and accounts exhibited by them; to call administrators to account; to decree the order of distribution after the payment of debts and expenses; to compel administrators to pay the same, and enforce it by execution against the person; to hear and determine any cause touching a legacy or bequest in any last will and testament; to decree the payment of a legacy or bequest, and enforce it; to order the admeasurement of dower upon the application of a widow, or of any heir or guardian of a minor; to order the sale of real estate for the payment of debts when the personal estate is insufficient, and when the real estate is insufficient, to divide the proceeds, after the payment of expenses proportionably among creditors; to confirm all such sales, and direct conveyances to be made by executors or administrators; and to order the mortgaging or leasing of the real estate of any testator or intestate for the same purpose, when infants are interested; to appoint guardians for infants, as fully as the chancellor might do; to record all wills proved before them with the proof thereof, letters testamentary and of administration granted by them, with all things concerning the same, all orders or decrees made by them for the sale of real estate, and all instruments, writings or documents, of a like nature left unrecorded by their predecessors, and to complete the unfinished business of their predecessors; to institute inquiry respecting the personal estates of intestates not delivered to the public administrator, nor accounted for lawfully by persons into whose hands it is supposed to have fallen; to compel the attendance of witnesses, the production of wills, documents or writings, and for disobedience in such cases, it has the power to

convict for contempt; and in all matters submitted to their cognizance, to proceed according to the course of courts having by the common law jurisdiction of such matters, except so far as restricted by statute, with such incidental powers as are necessary to carry those granted into effect.

The jurisdiction of said court was considerably enlarged by the Revised Statutes, while nothing was taken away except by the section repealed in 1837. The incidental powers of the surrogate's court, before the Revised Statutes, being restored by such repeal, the question presented is, were they such as authorized said court, under any circumstances, to revoke, modify or change its final acts or decrees, duly entered. The order appealed from can only be sustained, if sustained at all, on the ground that the power was incident to the general powers possessed by the court in order to enable it to carry them into full and complete effect.

As indispensable to the administration of justice, surrogates' courts have, to a limited extent, exercised the right of revoking acts done by them; as where a decree was obtained by collusion or fraud, (*Toller on Ex'rs,* 73;) where a later will has been produced, (*Will. on Ex'rs,* 478;) where, after a will has been admitted to probate, the party supposed to be dead appears; when through accident or mistake a decree was taken by default, (*Pew* v. *Hastings,* 1 *Barb. Ch. Rep.* 452;) where a decree for distribution had been made, but before distribution a legatee, not known to be in existence, appeared; where the court had acted without acquiring jurisdiction of the person; or where a party in interest had not been cited; or where no guardian had been appointed for an infant; where an order was actually made but not entered, it might by order entered *nunc pro tunc,* vacate any act or proceeding which was irregular and void, (8 *Paige,* 12, 127; 10 *id.* 318; 3 *Barb. Rep.* 341; 1 *Barb. Ch. Rep.* 302; 1 *Hill,* 139;) and

Campbell *v.* Thatcher.

in *Sipperly* v. *Baucus, (supra,)* it was held the court might correct any mistake, the result of accident; but such court can go no farther. Where parties in interest have been represented at a hearing, and final sentence or decree has been given, such court has no general power of opening or reversing its decree, on the ground that it erred as to the law, or decided erroneously upon the facts.

Can the correction sought in this case be said to come under the head of "mistake, oversight or accident." If not, the order of the surrogate was erroneons; otherwise it can be sustained.

The application shows that the petitioners employed counsel to make out their account for settlement, and left with him their vouchers for that purpose; that he made up the account; that the $500 was omitted; that the error was not discovered until the account was presented, and then believing, and relying upon that belief, that the amount would be allowed to them on the balance known to be in their hands going to the person who had received such money, they did not ask to have the account corrected, but allowed the error to pass. The residuary legatee now refuses to allow said sum to be deducted from the amount in their hands; and as the decree is conclusive against them, they are without relief unless it can be opened and the amount allowed.

I think the transaction may be treated as a mistake or oversight. It comes clearly within the principle laid down in *Sipperly* v. *Baucus,* and within the incidental powers possessed by surrogates' courts; and therefore the surrogate did right in opening the decree, and correcting the error complained of.

The fact that the claim was disputed should make no difference; if it did, it would be disputed in every instance.

The error complained of was not in the amount settled, and hence did not come within 2 Revised Statutes, 5th ed. 181, section 7, subdivision 1.

Upon the question of fact, whether the $500 was included in a subsequent receipt for $900, which had been presented and allowed on the settlement, the evidence was slightly conflicting. Although the finding of a surrogate upon conflicting evidence is not in all cases conclusive, it should be when the transaction was between living parties, where their conduct on the stand, and manner of testifying as witnesses, would influence in determining their credibility. But aside from this, the burden of proof was on the appellant; the executors produced his receipt for the sum claimed; its execution was not denied; it was for him to overcome that fact, to show that it had been included in another receipt; and in this he failed.

The order of the surrogate, and his final decree therein, affirmed, with costs.

[CLINTON GENERAL TERM, May 8, 1866. *Bockes, James, Rosekrans* and *Potter,* Justices.]