WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURROGATE.—
OCTOBER, 1874.

## HART v. DUFFY.

*In the matter of the final accounting of* JOHN DUFFY *and* EPHRAIM SOURS, *Executor, &c., of* PHILIP DUFFY, *deceased.*

A decree settling the account of an executor, &c., will only be opened on petition for that purpose, alleging proper grounds therefor, such as default, mistake, accident or error.

The Surrogate will not, after a lapse of six years from the final settlement of an executor's accounts, compel the executor to account for portions of the estate alleged to have been purchased by the executor himself or otherwise improperly applied, where it appears that such purchase and application of funds were made with the knowledge and assent of the party in whose interest the accounting is sought, a residuary legatee, and that the latter was cognizant of, and consented to, the accounts of the executor as finally settled. *So held* upon an application by a receiver of the property of the residuary legatee.

THE petition alleged that the petitioner, Monmouth G. Hart, was on the 3rd June, 1874, duly appointed receiver of all the debts, property and equitable interests of one Edward Duffy, in an action in the supreme court, in which Michael Daly is plaintiff and said Edward Duffy, defendant; that having executed and filed the proper bond as such receiver, an order was, on the 27th June, 1874, made by the Honorable A. B. Tappen, a Justice of the Supreme Court, authorizing and directing said receiver to institute a proceeding in this court against the above named executor, &c., of said deceased, who was the father of said Edward Duffy and then

follow the allegations usual in a petition for a citation to compel executors to render an account and to pay over to said petitioner an alleged interest of said Edward Duffy in the funds of said estate, to the extent of the petitioner's claim.

The executors filed an answer to the petition in which they allege that in Sept., 1868, they had a final accounting in relation to said estate, that all the parties interested, including said Edward Duffy, were duly cited to attend such accounting, and that such further proceedings were had that a decree was duly made and entered at that time, and their account finally settled and allowed ; and they further allege that since said accounting no property or effects of the estate have come into their hands, and that none such exist. The executors then produced the records and files of the Surrogate's office which verified the correctness of their allegations relating to said final accounting, including proof of due and proper service of the citation upon said Edward Duffy. It was thereupon insisted on their behalf that the proceedings should be dismissed. This was resisted on the part of the petitioner, it being alleged *aliunde* the petition, that the account, so filed on said final accounting, disclosed the fact that one of the executors had purchased for himself a portion of the real estate of the testator, which the executors were, by the will, ordered to sell. It was therefore claimed that the same still belonged to said estate, and that said Edward Duffy had an interest therein as residuary devisee. It was also claimed that funds belonging to the estate had been used by the executors to pay mortgages upon other lands devised to other devisees, and that those funds having been illegally applied, should now be accounted for by the executors. It was proven that Edward Duffy knew and approved of the sale of the lands to his brother, the executor, at the

time it was done, and also knew and approved of the application of the funds to extinguish the mortgages when that was done, that he had a knowledge of the account rendered by the executors on the accounting, and was satisfied therewith, and that he was then about thirty years old.   It was also shown that, after the executor so purchased said lot, he erected a house thereon and otherwise improved the property and has since sold and conveyed a part of it, and that all this was done with the knowledge and assent of said Edward Duffy.   It also appears that all these transactions, except perhaps the sale of a part of the lot, occurred prior to the accruing of the account on which judgment was obtained against Edward Duffy by Daly.

J. W. MILLS, *for petitioner.*

DANIEL HEIGHT, *and* J. O. DYKMAN, *for executor.*

THE SURROGATE.—The decree entered on the final accounting in 1868, could only be opened, I apprehend, by means of a petition filed for that purpose, alleging some proper ground therefor.   The petition in this matter makes no allusion, either in its allegations, or prayer, to that decree, and was, perhaps, prepared in ignorance of its existence.   The only ground upon which a Surrogate has power to open such decrees, is where they were taken by default and to the injury of the petitioner, or where there is an allegation of mistake, accident or error.   (*Rew.* v. *Hastings,* 1 *Barb. Ch. R.* 452 ; *Dobke* v. *McLaren,* 41 *Barb.* 491 ; *Sipperly* v. *Baucus,* 24 *N. Y.,* 46) And the grounds should be alleged in the petition. This court ought, therefore, to dismiss the application, but the petitioner claims that the executor should be compelled to account for the value of the land purchased by one of them, and also for other funds realized from the sale of other portions of the realty which were

used to pay mortgages upon other lands specifically devised. I propose to dispose of these questions here.

It is well established by authority, and may be regarded as an elementary principle, that a purchase of lands by executors which they are ordered or authorized by the will to sell, enures to the benefit of the estate, and that any one interested may enforce his rights in regard to them as if they were still unsold (4 *Kent's Comm.* 438 *and cases cited.*) Is the petitioner in this matter in a position to avail himself of this principle? He undoubtedly stands in the place of Edward Duffy, and is entitled only to his rights as they existed at the date of the judgment, or, at most, of the accruing of the claim on which the judgment is based. If Edward were the petitioner in this matter, I apprehend he would be precluded from making any such claim, because he would be estopped by his knowledge of, and consent given to, the sale to the executor. This act was impliedly and expressly sanctioned by him, and he, with full knowledge, stood quietly by and permitted the executor to go on and improve the lands so purchased by him, and even to sell a portion of them to other parties. It seems to me a clear case of estoppel *in pais.* In such a case, Chancellor KENT (*supra*) says " the *cestui qui trust* is entitled, as of course at his election, to acquiesce in the sale, or to have the property reëxposed to sale." In the case of *Dongrey* v. *Topping* (4 *Paige*, 94), it was held that where property was sold by order of a Surrogate, and the terms of sale were that a clear and satisfactory title should be given, and the administratrix (the widow) was cognizant of the terms, was present at the sale and joined in the conveyance, she was estopped from claiming dower as against the purchaser. Ignorance of rights on the part of the person making the representations, or acquiescing, will not preclude the application of the estoppel. (9

*Barn. & Cress.* 452; 1 *Story's Eq. Jur.* § 386; *Kingsley* v. *Vernon,* 4 *Sandf.,* 361.)    The same principle, I think, is applicable to the use of the funds of the estate in the extinguishment of mortgages upon lands specifically devised.

Again, Edward Duffy, having a knowledge of all the facts at the time they occurred, would be concluded by his *laches* from opening the account, were it otherwise a proper case for it.    The delay intervening is nearly six years, and the court will not interpose where a party has left his rights in a state of repose for so long a period. (*Rogers* v. *Rogers,* 1 *Paige,* 188; *Sipperly* v. *Baucus, supra.*)

The legal title to the lands in question is in John Duffy.   He and his co-executor conveyed them, by virtue of a power contained in the will, to Martin Dowling, who subsequently conveyed them to John Duffy.    It seems to me that the petitioner must apply to some other forum, if he desires to have those conveyances declared void so that the lien of his judgment may attach.

Of course, I am not called upon here to pass upon any question affecting the rights of the infant legatee, named in the will.

From the views above expressed, it follows that the proceeding must be dismissed.

Ordered accordingly.