OCTOBER TERM, 1874.

In the matter of CLEMENT's Appeal.

The Orphans Court has power to revoke letters of guardianship obtained through false representations.

*Mr. A. S. Boyd,* for appellant.

THE ORDINARY.

This is an appeal from a decree of the Orphans Court of the county of Bergen, made on the 28th of June, 1873, revoking letters of guardianship of the persons and estate of the children of John P. Costello, deceased, issued to the appellant by the surrogate of that county, on the 6th of December, 1872. These letters were issued on a written request, signed by the mother of the children, dated July 23d, 1872, and addressed to the court. She thereby renounced her right to the guardianship of her minor children, David, Christopher, Mary, Elizabeth, John, and Thomas Patrick, and requested that the appellant be appointed guardian. The application for the · letters was made on the day on which they were issued. The children were aged respectively, fifteen, thirteen, eleven, nine, seven, and about two years. On the 25th of January, 1873, Mrs. Costello filed her petition in the Orphans Court, alleging that on the 4th of December, 1872, certain persons conspired against her to obtain possession of her children, and to that end, caused her arrest and imprisonment in the county jail of Bergen county, and that on her release and return home, (she resided at Englewood, in that county,) she found that her children were scattered, and as she alleged, she was unable to ascertain the whereabouts of the three youngest, although she had made diligent search and inquiry for them ;

that she had been informed and believed that the children had been taken from their home on the day after her arrest and imprisonment; that she was informed that on the 6th of December, and while she was confined in jail, letters of guardianship of the children had been issued to the appellant; that she was entirely ignorant of the making of the appointment or of the proceeding in which it was made; that she did not knowingly sign any such paper as that above mentioned; that if her signature had been obtained to it, it was by misrepresentation of its contents; that she never heard the name of the appellant mentioned or proposed as the guardian of her children by any one; and that she would never knowingly have given her consent to the appointment of the appellant or any one else, to the guardianship. The petition prayed that the letters granted to the appellant might be revoked. The court, on the filing of the petition, made an order that the appellant show cause, on the 17th of February, 1872, why the letters should not be revoked. The order was served on him on the day on which it was made. Under this order, testimony was taken by the parties, and on the 28th of June, 1873, by the decree above mentioned, the court revoked the letters. From this decree the appeal under consideration was taken.

The appellant insists that the Orphans Court had no power to make the decree appealed from; that that court has no power to revoke letters of guardianship for any cause not specified by statute, and that it has no inherent power to right a wrong done in the appointment of a guardian, even though the appointment was procured by fraud. So broad a proposition cannot be maintained. The act "respecting the Orphans Court and the power and authority of surrogates," (*Nix. Dig.* 640,) gives to the court full power and authority, among other things, to hear and determine all disputes and controversies whatever respecting the right of guardianship. It empowers the court to appoint guardians, and to revoke their letters for causes specified in the act. Fraud in the appointment is not one of those causes. But the court is not

entirely confined to the powers specially granted by the legislature; and to a limited extent, such tribunals are in the habit of exercising incidental powers, which it is obviously necessary they should possess in order to prevent a failure of justice in consequence of mistakes and accidents, against which human foresight is not able to guard, and the more especially to guard against the consequences of frauds perpetrated on the court itself. Such power the ecclesiastical courts in England have constantly exercised. In *Carolus* v. *Lynch*, 1 *Lee's Ecc. Rep.* 13, administration which had been granted to one who falsely pretended to be a creditor of the intestate, was revoked. In *Cornish* v. *Cornish*, *Id.* 14, administration which had been granted to an illegitimate son on a false affidavit, was revoked. In *Burgis* v. *Burgis*, *Id.* 121, an administration granted to a brother of an intestate was, on the interest of a minor son being established, revoked, and decreed to the guardian for the use of the minor. In *Ogilvie* v. *Hamilton*, *Id.* 357, a fraudulent administration was revoked, and in *Smith* v. *Corry*, *Id.* 418, administration granted on false suggestion, was revoked. See also *Harrison* v. *Weldon*, 2 *Str.* 911. Such power has been held to exist in the surrogates in the state of New York, on the ground that it is absolutely essential to the administration of justice. *Pew* v. *Hastings*, 1 *Barb. Ch. R.* 452 ; *Vredenburgh* v. *Calf*, 9 *Paige* 128; *Proctor* v. *Wanmaker*, 1 *Barb. Ch. R.* 302 ; *Skidmore* v. *Davies*, 10 *Paige* 316 ; *Campbell* v. *Thatcher*, 54 *Barb.* 382. In *Carow* v. *Mowatt*, 2 *Edw. Ch.* 57, it was held that if, through mistake or inadvertence, administration was committed to an infant, the surrogate should revoke the appointment. In this court, in the matter of the will of Isaac Lawrence, 3 *Halst. Ch. R.* 215, the Ordinary vacated the probate of a foreign will as having been improvidently granted. In the present case, the court having afforded the appellant an opportunity to be heard, of which he availed himself, and having found that the letters were issued upon a false representation, revoked them. I think they had a right to do so under the circumstances.

In the matter of Clement's Appeal.

It remains to consider whether their action was justifiable. From a perusal of the testimony in this case, it is impossible to resist the conclusion that the document on which the appointment was made, was signed by Mrs. Costello, without a knowledge of its full import. She evidently supposed that it was merely intended to give to the person to be appointed, the charge of the pecuniary interests of her children, and not to deprive her of the custody of their persons. And there is abundant evidence that it was well understood by those who procured her signature to the paper, that such was her understanding of it. One of them, who appears to have been the principal actor in the business, says, that after she had been arrested, he spoke to the appellant of the necessity of getting out the letters, in order to place the children in the institution in which they proposed to put them ; that no opportunity had occurred between the date of the instrument, July 23d, and the 6th of December, to take away the children, as they feared the results on account of the scandal which might arise from it to the mother ; that they wished to do it as peaceably as possible ; and he adds, that he does not believe that they could, at any time during that interval, have obtained possession of the children without a breach of the peace ; that they would have had to take them away against her will, and certainly could not have done it without a breach of the peace ; and that they thought it an excellent opportunity while she was in jail, to get them. The institutions above alluded to, were two orphan asylums, one in Newark and another in Paterson, and a foundling hospital in the city of New York. Two of the youngest of the children were placed in the orphan asylums, and the youngest, a nursing child, in the foundling hospital. The charge on which Mrs. Costello was committed to jail, was disorderly conduct. She was committed by the person, a justice of the peace, who obtained her signature to the request on which the appointment was made. He alleges that he read the paper to her when she signed it, and that he believes she understood it. He did not explain it to her, however.

The value of his testimony on this score is diminished by the fact that he professes ignorance as to the origin of the paper ; says he does not know from whom he received it, with instructions to get it signed, nor who got it from him afterwards ; nor can he say in whose handwriting it is. In short, he professes an ignorance in regard to the instrument, which is all the more incredible from the circumstance that the person by whom it was written, testifies that he wrote it at the request of the justice himself, and Mrs. Costello swears, that when he came to get her signature, he told her that that person had requested him to get it. It is not necessary to impugn the motives of the actors in this matter. Their method, however, is open to reprehension. However disinterested their motives, and however benevolent their intentions, the representation made to the court by means of the instrument to which they had obtained Mrs. Costello's signature, was a fraud on the court in the premises. She had not knowingly requested the court to appoint the appellant guardian of the persons of her children, and it is impossible to doubt that the actors in this matter well knew it. That she would resist the appointment of a guardian, which could by any means result in depriving her of the custody of her children, especially of her nursing child, was not to be doubted. The use of this instrument, then, for the purpose of procuring the appointment of a stranger as the guardian of the persons of her children, as a means of depriving her of them, however benevolent the end designed to be accomplished, was a misrepresentation. Its effect would be to prevent the court from looking into the matter and exercising their discretion on the subject. They would naturally, at the request of the mother, readily appoint a guardian named by her, while under other circumstances, they would at least have listened to her remonstrance, and advisedly have taken such action in the premises as seemed most judicious. I see no reason for reversing the decree. It will be affirmed.