WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURROGATE.—December, 1885.

## OLMSTED *v.* LONG.

*In the matter of the disposition of the real property of* CHARLES OLMSTED, *deceased, for the payment of his debts.*

Power to grant a new trial or new hearing, for newly discovered evidence, which means a re-trial of the issues made by the pleadings, is the only really new power conferred upon Surrogates' courts, by Code Civ. Pro., § 2481, subd. 6, whereby a Surrogate, is permitted, in court or out of court, "to open, vacate, modify or set aside, or to enter as of a former time, a decree or order of his court; or to grant a new hearing for fraud, newly discovered evidence, clerical error or other sufficient cause."

Upon the principle that punctuation may be disregarded, where necessary, in construing statutes, the semicolon appearing in the subdivision quoted is to be deemed replaced by a comma; so as to confine the exercise of the powers specified in the former of the two clauses, to cases presenting one or more of the grounds mentioned in the latter.

Where the granting, by a Surrogate's court, of an application to open, vacate and set aside a decree thereof, would necessarily lead to a new trial or hearing,—as where the applicant relies chiefly upon allegations of fraud or newly discovered evidence,—the case is to be governed by the principles established respecting the grant of new trials, though a prayer for such relief is not contained in the petition.

The reasonable rule established by the superior courts, on a motion for a new trial, prevails, also, in Surrogates' courts, viz.: that alleged newly discovered evidence must be so clear and positive as to satisfy the mind of the court that, if offered pending the trial, it would have changed the result.

The question whether an attorney, who appeared for a party to a special proceeding in a Surrogate's court, which has been terminated by decree, was guilty of gross neglect to produce proper evidence on the hearing, is a matter between attorney and client, with which such court has nothing to do.

An application, made upon various grounds, to open and vacate a decree directing the sale of certain of decedent's real property for the payment of his debts—denied upon the merits.

CHARLES OLMSTED died intestate in February, 1882. Letters of administration on his estate were duly issued to his widow, Rachel Olmsted, in March following. On March 28th, 1884, she rendered her account, as such, all persons interested in the estate having been cited to attend the same. From the account, it appeared that there were no assets of the estate left unadministered. A decree was entered accordingly.

Edward B. Long, claiming to be a creditor of decedent, then, on July 30th, 1884, made application to have the real property of decedent mortgaged, leased or sold for the payment of his debts. A copy of the account rendered by the administratrix was annexed to the petition. Cyrus Olmsted, one of the heirs at law of decedent, and Miles W. Olmsted, his son, and a grantee of some of the premises of which the decedent died seized, were, among others, cited to show cause why the prayer of such petition should not be granted. They both appeared, and said Miles W. Olmsted litigated the matter upon various grounds, but did not question the allegation, contained in the petition, to the effect that the personal estate had been duly administered, and was insufficient to pay the debts.

The chief ground of contention was in regard to the validity of the claims presented, and the amounts due thereon. Such proceeding resulted in a decree fixing the amounts due upon such claims, adjudging, among other things, that the administratrix had proceeded with reasonable diligence in converting the assets into money, and that such money was insufficient to pay the debts. The decree, entered in March,

1885, directed the mortgaging of certain premises, known as 335 Spring street, in the city of New York, to pay the debts established. In July following, a motion was made, on behalf of the Olmsteds, to re-settle the decree, which was, after hearing argument, denied. Subsequently, on notice to the parties inter-ested, a motion was made, on behalf of the creditors, to modify the decree so that a sale of the premises should be made, as the money could not be raised on a mortgage; which motion was granted without ob-jection, and the decree so modified.

Miles W. Olmsted now presented a petition in which he prayed to have the decree opened, vacated, and set aside, on the ground, as alleged, that certain assets of decedent, to wit, certain leases of decedent of cer-tain premises in the city of New York, of a rental value nearly sufficient to pay such debts, together with a certain check of $1,359, part proceeds of a sale in partition of the real estate of the Olmsteds which was directed by the Supreme court to be ap-plied to the payment of the claim of said Long, and which was still applicable to that purpose, should be so applied. These leases, it was claimed, had been recently discovered. It was also alleged, as a ground of the application, that two of the creditors of the decedent were not made parties to the proceedings to mortgage, etc. The petitioner further prayed that the alleged assets might be first applied to the pay-ment of the debts, before any part of the real estate was resorted to. Another ground for the relief asked was the alleged gross neglect and misconduct of peti-

tioner's attorney in that proceeding, in not bringing the facts stated to the knowledge of the court.

PETER MITCHELL, *for petitioner.*

M. M. SILLIMAN, *for Long, creditor.*

GUY C. H. CORLISS, *for C. K. Corliss, creditor.*

C. FROST, *for certain grantees.*

THE SURROGATE.—This is an application made under the provisions of subd. 6 of § 2481 of the Code, which declares that the Surrogate shall have power " to open, vacate, modify, or set aside, or to enter, as of a former time, a decree or order of his court ; or to grant a new hearing for fraud, newly discovered evidence, clerical error, or other sufficient cause." Applications under this subdivision are becoming very frequent, and it is, therefore, of much importance that an effort should be made to put a proper construction upon the sentence quoted. There would be no difficulty in this respect, were it not for the semicolon following the first clause. It would seem that that clause gives the power " to open, vacate, modify, or set aside, or to enter as of a former time, a decree or order " without any assigned cause for its exercise ; and that then, by the latter clause, a new trial or a new hearing may be granted " for fraud, newly discovered evidence, clerical error, or other sufficient cause." The first clause seems to have been based upon various decisions of the late Court of Chancery and of the Supreme court, and Court of Appeals, holding that a Surrogate had the power, although not

expressly conferred by statute, to *vacate and set aside* a decree or order which he had no jurisdiction to make (Vreedenburgh v. Calf, 9 *Paige*, 128); to *open* a decree entered by default, in consequence of mistake or accident, depriving the applicant of a hearing (Pew v. Hastings, 1 *Barb. Ch.*, 452); to *modify* a decree by the correction of mistakes and *clerical errors*, the result of oversight or accident (Sipperly v. Baucus, 24 *N. Y.*, 46; Campbell v. Thatcher, 54 *Barb.*, 382); to *vacate* a decree for fraud (Yale v. Baker, 2 *Hun*, 468); and see Strong v. Strong (3 *Redf.*, 477, and cases cited; also Commissioners' note to the section).

Thus, before this section was enacted, it had been established that this court had power to open, vacate, modify or set aside a decree for "fraud, clerical error, or other sufficient cause," such as a want of jurisdiction, or an excusable default. In some of these cases, a further hearing would be had, as a necessary sequence. It would, therefore, seem that the only really new power conferred is to grant a new trial or new hearing for newly discovered evidence; which means a re-trial of the issues made by the pleadings. It is not apparent how there could be a new trial in regard to a "clerical error," which is usually to be found on the face of the papers—such as an error in placing or adding figures, etc. If the semicolon, whose office is to distinguish the conjunct members of a sentence, were dispensed with, and a comma substituted in its place, we should have a clearer conception of the meaning of the sentence (See Matter of Accounting

of Hawley, 100 *N. Y.*, 206).  Courts will, if needful, disregard punctuation in construing statutes.

Here the application is made to open, vacate and set aside a decree duly entered, after a long litigation.  A new trial or hearing, as such, is not asked for, but, according to the views expressed, such would be the result on granting the application, if the facts stated in the petition warranted the conclusion that evidence bearing upon the issues tried, or which an amendment of the pleadings would permit trying, has been discovered since such trial, or that the decree was obtained by fraud.  No objection as to the regularity of the proceedings leading up to the decree has been taken, except that two of the creditors of the deceased had not been cited in the matter.  Proof was furnished that one of them was duly cited, and as to the other, instead of there being any proof that he is a creditor, it appears from the account of the administratrix that he had been paid out of certain Fort Lee Park and Ferry stocks which he held as collateral ; that the stocks had been sold, he paid, and the balance of the proceeds, amounting to about $875, duly accounted for by the widow.  A copy of the account which the administratrix, the grandmother of the petitioner rendered, was annexed to the petition in the proceeding to mortgage, etc.  So that this petitioner then, and throughout the litigation, had a complete knowledge of what had been done by the administratrix, as such. .

But he claims that he has recently discovered, solely on information and belief, that the deceased held some leases on real estate in the city of New

York, the net rental value of which is sufficient, with certain other available funds, to pay the debts established in this proceeding. Section 2755 of the Code provides that an heir or devisee of the property in question, or a person claiming under either, may contest the necessity of applying the property to the payment of debts, may contest the validity of any debt, and may interpose any defense to the whole or any part thereof. No defense was interposed by any person, of any character, except such as related to the validity and amount of the debts. It is not now shown that the petitioner or his father, who has made an affidavit touching the leases, ever saw any such leases, or any record thereof, nor are their contents made known. The father of the petitioner, and his grantor, was a witness on the stand in the chief proceeding, and testified to certain entries in a book kept by the deceased, with a view to establishing a payment on one of the claims then in litigation. The affidavit he now makes is to the effect that the same book contained an entry of the deceased in regard to these leases. It would thus seem that, if there are any such leases in existence, he possessed all the knowledge he ever had on the subject when that proceeding was pending, and the information of the petitioner in regard thereto was doubtless derived from his father. The allegations of the existence of any such leases rest wholly on information and belief, and are of such a character as not to warrant this court in opening the decree. There is no evidence showing that they were in force at the time of Charles Olmsted's death, or that he had not disposed of them

in his lifetime. The account rendered by the administratrix shows that she had no knowledge of them ; and Cyrus Olmsted was a party to that proceeding and interposed no objection. As the grantor, in possession of the intestate's book on which he says the entries were made relating to these leases, and which entries furnish all the knowledge he pretends to have on the subject, it was his duty, for the protection of himself and his grantee, to have raised the question now presented, when he had the book in his hand, and was testifying to other entries therein. A solemn adjudication, made after hearing all parties interested, cannot be disturbed on such uncertain evidence as is furnished, based mainly on information and belief. The evidence must be so clear and positive as to satisfy the mind of the court, that, if offered pending the trial, it would have changed the result. This is the reasonable rule established by superior courts, on a motion for a new trial. And here, a new trial would result, were the application granted on the ground under consideration.

If it be claimed that the administratrix was guilty of a fraud in not accounting for these leases, the answer is that there is no evidence whatever on which to base such a charge. There is no evidence to establish the existence of such leases as assets, as has already been stated, and if there were, there is no proof that she ever had any knowledge of them. To warrant the court in setting aside the decree for fraud, the evidence of the fraud must be clear and conclusive.

Another reason assigned for setting aside the decree

is that a check for some $1,359, being part proceeds of a sale of lands in which the intestate had an interest, in an action for partition, was directed by the Supreme court, in which the action was pending, to be applied toward paying the claim of E. B. Long, the chief creditor. This check, Cyrus Olmsted states, in his affidavit, he has in his possession; how long he has had it does not appear. The first question which naturally arises is—why has it not been, and is it not now, applied to its designated purpose? With it, however, this court has here nothing to do. It is not pretended that it is assets of the intestate, over which this court has any control. Besides, the order of the Supreme court on the subject was made long after the commencement of the proceeding to mortgage, etc., and after the rights of the respective parties had come into existence. No order of that court could affect those rights then about to be ascertained and established; although it was, doubtless, competent for one to tender, and the other to receive, the check or the amount it represented.

The petitioner charges that his attorney was guilty of gross neglect in not bringing to the knowledge of this court the facts on which he now bases his claim for relief. That attorney ably and zealously contested the creditor's claims, and there is no evidence to show his knowledge of such facts. If he had such knowledge, he must have derived it from his client, and that would contradict the statement of the petitioner that he had "recently" himself discovered them. But this is a matter between attorney and client, with which this court has nothing to do.

I can, therefore, discover no cause for granting the prayer of the petition, or in any way disturbing the decree in question.

The motion is denied, with ten dollars costs.