New York County.—Hon. D. G. ROLLINS, Surro-
GATE.—August, 1886; Jan'y, 1887.

MATTER OF TILDEN.

*In the matter of the estate of WILLIAM TILDEN,
deceased.*

Where, upon an accounting by testamentary trustees, it appears that they
have on hand surplus income of a fund, held by them for the satisfac-
tion of annuities and other charges under the will of their testator, they
cannot be directed, against the objection of those entitled to the resi-
due, to hold such surplus in order to meet the possible future demands
of those annuities and charges, as this would be to sanction an unlaw-
ful accumulation.

Executors who surrender to the government U. S. bonds, called by the
latter, being assets of their decedent's estate, cannot be held thereby to
*collect a debt*, within the meaning of a provision in the will allowing
them five per cent on all sums received from the " collection of debts
owing " to the decedent.

*It seems*, that a testamentary provision in favor of executors, in lieu of
statutory commissions, the amount " to be divided among them from
time to time," is substantially a legacy, payment whereof may be
awarded in respect of transactions embraced in an account already set-
tled by decree, and without opening the same.

Testator, by his will, which allowed to the executors, " on the proceeds
of sale of real estate, one per cent. of the amount received," gave the
residue of his estate, real and personal, to his children, in equal shares,
authorizing his executors to execute all conveyances necessary to effect
a division, *or* in order to sell and convert into money any part of his
real estate. A division, *in specie*, of certain of the real estate having
been made among the children, by deeds executed by the executors
and others interested,—

*Held*, that commissions on the proceeds of sale of real estate were not
earned by the action of the executors, in such allotment and convey-
ance.

A disallowance of an item in a trustee's account, representing a sum re-
tained by him as commissions, the retention whereof has been sanction-
ed by a decree entered upon a judicial settlement, cannot be effected by
denying commissions on a subsequent accounting, in an amount equal

to the alleged prior overpayment, nor until such decree has been opened and vacated.

A Surrogate's authority to open a decree of his court depends upon Code Civ. Pro., § 2481, subd. 6, which does not include a case where such adjudication is assailed as based upon an erroneous theory of law.

HEARING of exceptions to report of referee, to whom were referred the sixth account of the executors of decedent's will, and the exceptions thereto, filed in proceedings for judicial settlement.

CHAS. E. TRACY, *for executors.*

A. H. MANN, C. A. HAND, D. J. NEWLAND, GEO. W. ELLIS, CHAS. H. WOODRUFF, EDW. P. KENNARD, *and* W. S. MACFARLANE, *for other parties.*

THE SURROGATE.—Upon the coming in of the report of the referee, to whom were submitted the sixth account of this testator's executors and the objections thereto, certain exceptions have been interposed in behalf of the accounting parties, and certain others in behalf of divers persons interested in the estate. As to one of these exceptions, it is on all hands agreed that, in its main aspects, it need now to be considered. The exception relates to the finding of the referee that, for the satisfaction of certain annuities and charges under the testator's will, " the whole of the property now in their " (the executors') " hands should be retained by them," and no portion thereof be distributed at present among the other beneficiaries. The value of that property is shown by the account to be $484,781.34, but on behalf of certain objectors it is insisted that a portion thereof, amounting, as the account shows, to $29,109.01, should be treated as

surplus income; and that, conceding for present purposes that all funds in excess of such $29,109.01 should be held intact to meet the annuities and charges, that sum, or such larger or smaller sum in excess of principal as upon the settlement of this account may be discovered to be in the executors' hands should be straightway distributed.

I think that this claim is well founded, By reference to Schedule B., parts two, three and four, it will appear that the gross income accounted for is $140,570. 29; Schedule C. discloses that the aggregate payments thereout amount to $111,300.28; the difference is $29,270.01. This sum seems to be a clear excess of income above annuities and other charges. To permit its retention for meeting the possible future demands of annuities would be to sanction an unlawful accumulation (§ 37, tit. 2, ch. 1, part 2, R. S., 3 Banks, 7th ed., 2178; §§ 3, 4, tit. 4 ch. 4, part 2, R. S., 3 Banks, 7th ed., 2257.)

The surplus may therefore be distributed.

*Second.* Exceptions have been filed to the conclusions of the referee respecting the amount of commissions to which he finds the executors entitled.

The basis of computation of commissions is fixed by the will. Its 18th article is as follows: "In lieu and exclusive of all other commissions and compensation to my executors for performing their duties under this will, and in addition to their actual and necessary disbursements and expenses, I authorize them to receive from my estate the following commissions, namely, on all sums to be received from my said partner as my capital in said partnership and on

all interest and income *on investments in the public debt of the United States,* or in county bonds, and on the proceeds of sale of real estate, one *per cent.* of the amount received, and on all sums received from personal property sold or rents or the collection of *debts owing to me* or for income of other funds or investments, five *per cent.* of the amounts received, and on all sums of money invested by them two *per cent.* of the amount thereof."

Counsel for Beverly B. Tilden and Edward T. Kennard, as his trustees, objected before the referee to the allowance of five *per cent.* claimed by the executors as commissions on the following items :    One of $25,000 (the value of certain United States bonds left by decedent as a part of the assets of his estate, and subsequently called in by the Government): another of $2,000 (the principal of Holy Trinity Church bonds collected by the executors) ; and a third of $500 (of a character similar to the item next preceding). These objections were overruled by the referee, who has found that all the bonds in question were debts owing to the testator. This finding, so far as it relates to the church bonds, is doubtless correct; but the proposition that bonds of the United States Government, held by the testator at his death, must be deemed, within the meaning of the 18th clause of his will, " debts owing to me " (him) is, in my judgment, erroneous. In strict technical sense the import of the word " debt " is doubtless broad enough to cover bonds of every sort, as well those in which the State or Government is obligor as those in which the party binding himself is a private individual. But in com-

mon parlance, bonds of the United States are not spoken of as constituting or evidencing a debt of the United States, and the word "debt," as ordinarily used in connection with the administration of decedents' estates, has a narrower signification than is here sought to be put upon it.

If a testator should direct his executors to collect immediately after his decease all debts owing to him and to sell such as had not fallen due, and invest the proceeds of such collection and sale in United States bonds, it could scarcely be claimed that obedience to such direction would require the executors to dispose of whatever government securities should have come to their hands from their testator and straightway apply the proceeds to the purchase of others. When the executors who are here accounting surrendered to the government the registered bonds which have occasioned this discussion, it is very unlikely that they would themselves have characterized the transaction as the collection of a debt. It was not in pursuance of their duty to collect debts that they made the surrender, but because the securities which they gave up would henceforth bear no interest, and would accordingly cease to have the character of an investment. For rewarding the labors and stimulating the zeal of his executors in the collection of debts, it seemed fit to this testator to allow them a commission of five *per cent*. And what were they instructed to do with the moneys obtained by such collections? The will by its 14th clause specifies "registered stocks of the United States" as the first named among the securities in which the executors are directed to invest the

funds of the estate.   It will be observed also that, by the 18th clause above quoted, the testator makes provision for commissions at one *per cent.* for the collection of interest and income " on investments in *the public debt* of the United States."   This phrase, which is in close proximity to the phrase " debts owing to me," has the same meaning of course as the term " stocks " in article 14.   There is, therefore, taking the two articles together, a direction by the testator substantially as follows :   Collect all *debts owing to me* " and invest the proceeds in (among other things) the *"public debt"* of the United States.   This is to my mind a very significant antithesis.

I have no doubt of the testator's intention to give his executors liberal compensation for their services, and I might hesitate to adopt a construction of article 18 which would exclude investments in United States bonds from the category of debts due the testator if the executors would be thus deprived of compensation for their care and pains in effecting an exchange of securities held by the testator for other securities of a similar character ; but under the terms of the will, as I interpret it, the executors became entitled upon such exchange to a commission of two *per cent.*, which, indeed, they have already claimed and received.   The referee's report allowing commissions at five *per cent.* upon this item of $25,000, must therefore be overruled.

*Third.* The conclusion just arrived at compels me to deny the application of the executors to be allowed an additional four *per cent.* by way of commissions upon the value of certain other United States bonds

found among the assets of the testator at his death and subsequently redeemed by the Government.

*Fourth.* The remaining question upon which I am now asked to pass is clearly presented by the following stipulation entered into by the objectors:

"It will be conceded that, during the period covered by the fifth accounting, and in accordance with the provisions of an agreement executed by the widow and four sons of the testator and under the direction or supervision of the executors, real estate left by the testator was valued by chosen appraisers at $525,190.66, and, having been divided into four parcels, was allotted to or among the four sons, to whom, or for whose account the several allotments were respectively conveyed by the executors, by deeds to which the widow and sons of the testator were also parties. No commissions on such value of real estate have been computed or realized by the executors, who now claim the same (amounting at the rate of one per cent. to $5,201.99) as having been erroneously omitted on the said fifth accounting.

"The application of the executors for rectification of this error is to be heard and disposed of upon the same footing and with like effect as if any and all formal preliminaries had been had to enable the court to entertain and dispose of the application, and the executors are to be considered as moving in due form in so far as may be deemed necessary to reopen the decree upon the fifth accounting for the sole purpose of correcting said error. But the other parties, while waiving all objections as to preliminaries or to the form of the motion, do not conceive that the commissions

ought to be computed and allowed as claimed, nor that the fifth accounting or the decree thereon ought to be reopened for that purpose."

Upon this state of facts, the question first presented is this: Are the executors precluded by the decree above referred to from obtaining the relief for which they now ask? Their counsel insists that they are in a very different situation from that which they would occupy if they depended for their compensation upon the provisions of the statute. He admits that in a case where, in accordance with § 2736 of the Code of Civil Procedure, and § 58, title 3, ch. 6, part 2, R. S. (3 Banks, 7th ed., 2303), commissions had been allowed by the Surrogate upon the settlement of a decree in an accounting proceeding, there might be grave doubts whether any additional commissions could subsequently be awarded with reference to any of the transactions covered by that decree, and equally grave doubts whether, when a decree had been entered making no mention of commissions or expressly disallowing them, commissions could subsequently be awarded. But it is claimed that a testamentary provision in favor of executors in lieu of the statutory compensation is substantially a legacy, and that, in the absence of any direction by the testator that such legacy shall be taken at any particular time, and that, failing to take it at the time specified, the executors shall be thenceforth estopped from claiming it at all, they may claim and retain it at any time while they have funds in their hands applicable to that purpose. I think there is much force in this contention. This testator says, at

the close of the 18th clause of his will, "I authorize them" (the executors) "to receive from my estate the following commissions, namely" (then follows the scheme of allowances) "such commissions to be in full for such services and the amount to be divided among my executors *from time to time* equitably in proportion to their respective services."

Under these circumstances, I do not think it can fairly be claimed that the decree by which the fifth account was settled was an adjudication that the sum which appeared by such account to be charged as commissions was all the compensation to which the executors were then entitled, or that that decree affords any protection to these objectors against a present allowance as commissions of any sum, in addition to the sums whose retention was by that decree sanctioned, which the executors can now show themselves entitled to receive.

I am also of the opinion that, if the relief claimed by the executors can properly be granted, it may be given by the decree to be entered upon the present accounting, and without opening the decree entered upon the last.

Whatever right the executors may have to commissions upon the real estate partitioned among the devisees springs .from the provision of the will which allows them "on the proceeds of the *sale* of real estate one per cent. of the amount received." While under some circumstances and for some purposes such a disposition of realty as was here effected might be regarded as a sale, it cannot, I think, be so regarded for the purposes now under consideration.

By the 11th article of his will, the testator gives all the rest and residue of his estate, real and personal, to his children in equal shares, subject to certain powers and directions in the will contained. Among those powers is the power which article 12 confers upon the executors; that of managing the share of each child during his minority. In article 14, the testator says: "I authorize and empower my executors to make, sign, seal, acknowledge and deliver any and all deeds and conveyances which may be necessary in order to carry into full effect any division they may make" (i. e., among the children) "or to declare or evidence the same, or in order to sell and convert into money or personal property any part of my real estate."

I think that, by this language, a clear distinction is made between the authority of these accounting parties to execute conveyances for the purpose of carrying into effect a division in specie among the children, and their authority to execute such conveyances after the sale of real property and its conversion into money or personal securities. And I hold that one per cent. commission on the proceeds of sale of real estate were not earned by the action of the executors in allotting such real estate among the devisees.

In January, 1887, the Surrogate filed the following opinion, in the matter of the same estate:

THE SURROGATE.—The fourth account of the executors and trustees of this estate was settled by a de-

cree entered on April 30th, 1880, and the fifth by a decree entered on June 29th, 1885. The former sanctioned the retention by the accounting parties of the sum of $9,339.59 as compensation to which, under the testator's will, they had become entitled for their services. The latter sanctioned a similar retention for a like cause of the sum of $10,506.66. None of the parties interested in the estate made any objections to these credits. Upon the sixth accounting of the executors and trustees, which went into decree on December 6th, 1886, their claim to compensation was challenged and was in part disallowed.

I am now asked to "correct" the decrees of 1880 and 1885, upon the ground that the sums therein allowed the executors for their services were in excess of the sums to which they would have been found entitled, upon application of the tests established by the referee and the Surrogate upon the sixth accounting.

The executors have asked and obtained leave to resign and have now filed an account of their management of the estate since October 25th, 1885, wherein they claim commissions in the sum of about $4,000. It is insisted that, without formally opening or setting aside either of the decrees complained of, the alleged overpayments may be rectified by a present disallowance of commissions in an amount equal to such overpayment. In my memorandum of August 14th, 1886, I intimated that if the executors, who had theretofore asked to be allowed commissions on certain transactions covered by previous accountings upon the ground that they had not retained all that they were entitled to claim, were correct in their contention, the

relief prayed for might be granted, even without opening the decrees by which the former accounts had been settled; and this, because in view of the special directions of the will regarding their commissions, whereby they were permitted to retain them "from time to time," the allowance of such retentions as were sanctioned by those decrees could not be taken as an adjudication that the sum contained was *all* to which the accounting parties were entitled. It by no means follows that a *disallowance* of any sums heretofore withheld, the withholding of which has been approved by the Surrogate, can now be lawfully effected, until the decrees adjudicating that approval shall have first been opened or vacated.

Now, the moving party herein has not made out a case which will justify any interference with either of the decrees that he assails. The Surrogate has authority, under subd. 6 of § 2481 of the Code of Civil Procedure, to "open, vacate, modify or set aside a decree or order of his court." But the powers thus conferred, the section proceeds to say, "must be exercised only in a like case and in the same manner as a court of record and of general jurisdiction exercises the same powers."

There is no proof that the provisions sought to be corrected, even assuming them to be erroneous, were fraudulently or collusively inserted, or are the result of clerical errors, accident or irregularity, or that failure to object to their inclusion in the decrees was due to the excusable negligence of the party now claiming to be prejudiced. His contention simply amounts to this: that the compensation allowed the executors

on the fourth and fifth accountings was allowed upon an erroneous theory of law. This will not suffice (Yale v. Baker, 2 *Hun*, 468; Dorke v. McClaran, 41 *Barb.*, 491; Decker v. Elwood, 3 *T. & C.*, 48; Sipperly v. Baucus, 24 *N. Y.*, 46; Melcher v. Stevens, 1 *Dem.*, 123; Munroe's Estate, 15 *Abb. Pr.*, 363; Brick's Estate, 13 *Abb. Pr.*, 12, 36; Matter of Tilden, 98 *N. Y.*, 434; Wright's Accounting, 10 *Abb. Pr. N. S.*, 429; Story v. Dayton, 22 *Hun*, 450; Singer v. Hawley, 3 *Dem.*, 571; Matter of Hawley, 100 *N. Y.*, 206; Farmer's Loan & Trust Co. v. Hill, 4 *Dem.*, 41).

The application must, therefore, be denied.