1839.

Butler
v.
Emmett.

---

## Butler *vs.* Emmett and others.

A creditor who has assigned all his interest in a debt against his deceased debtor, to a third person, is not authorized to present a petition to the surrogate to compel the executors or administrators of the decedent to sell the real estate, for the payment of such debt, where the personal property of the decedent is insufficient for that purpose; but the assignee of the debt, who is the real creditor, must institute the proceedings before the surrogate in his own name.

It seems, that a judgment creditor of the decedent cannot institute proceedings before the surrogate to compel a sale of the real estate of the decedent upon which such judgment is a lien; nor can he come in and prove the judgment debt before the surrogate, for the purpose of obtaining a distributive share of the proceeds of the real estate which has been sold under an order of the surrogate, subject to the lien of his judgment, according to the provisions of the revised statutes; but his remedy, to obtain satisfaction of his debt out of the proceeds of the real estate of the decedent, is to revive his judgment by *scire facias*, and to sell the real estate upon execution.

The purchaser, at a sale of the real estate of a decedent for the payment of debts, under an order of the surrogate, takes the property subject to all the

previous incumbrances thereon, by judgment, mortgage or otherwise. And if he wishes to obtain a perfect title to the premises, free from incumbrances, the amount of such incumbrances must be ascertained before the sale; and the premises must be sold upon the condition that the amount, as thus ascertained, shall be paid out of his bid upon the property, and that the residue of such bid only shall be returned to the surrogate as the proceeds of the sale which are to be distributed rateably among the other creditors of the decedent.

It seems, that an order of a surrogate may be entered by him, nunc pro tunc, as of the time it was actually made, where by mistake, or inadvertence, it was not entered in his books at the time it was made.

Whether an administrator can apply to the surrogate for an order to sell the real estate, for the payment of debts, before he has made and filed an inventory of the personal estate of the decedent, only verified according to law—*quære?*

An irregularity in giving notice to the heir at law of the decedent, of an application to the surrogate for an order to sell real estate for the payment of debts, is cured by a subsequent petition of such heir, to the surrogate, for an order to confirm the sales which had previously been made under the former order, and to authorize the administrator to give deeds to the purchasers and to receive the purchase money bid upon such sales.

An application by a creditor, to compel the personal representatives of the decedent to sell his real estate for the payment of debts, must be made within three years after the granting of letters of administration on the estate. And where an order for the sale of a portion of the real estate has been made, a subsequent application, by a creditor whose claims have not been allowed by the surrogate in the manner prescribed by law, must also be made within the three years from the time of granting administration on the estate; and notice of such application must be given to the heirs at law of the decedent, as well as to his personal representatives.

It seems, that a surrogate has not the power to compel the purchaser of the real estate of the decedent, at a sale made by the executors as administrators under an order of such surrogate, to take the conveyance of the property and to pay to the executors or administrators the purchase money bid upon the sale.

This was an appeal from a decision of the surrogate of July 16. the city and county of New-York. Charles Smyth, of the city of New-York, died intestate in the beginning of the year 1832, leaving a widow and two children, one of which children was an officer in the army stationed at Fort Moultrie in the harbor of Charleston, and the other a resident of New-York. Administration on his estate was granted to Ann Smyth, his widow, on the 8th of October, 1832. In January, 1834, she presented a petition to the surrogate

of New-York, stating, among other things, the granting of administration to her, and that the intestate left no personal estate whatever which she had been able to discover, and that he left none according to her belief; that the debts due by him at the time of his death, as far as she could ascertain the same, amounted to $11,661,38, including two mortgages upon a part of his real estate amounting together to about the sum of $5700; a particular account or statement of which debts, and the persons to whom they were due, was contained in a schedule annexed to her petition. The petition also contained a statement of all the real estate of which the intestate died seized, and conformed in other respects to the requirements of the statute; and concluded with a prayer that the administratrix might be authorized to mortgage, lease, or sell so much of the decedent's real estate as should be necessary for the payment of his debts, and that all persons having an interest in the estate might be directed to appear and show cause, &c. according to the provisions of the revised statutes on that subject. An order was made according to the prayer of the petition, requiring all persons interested to show cause on the tenth of March, 1834. On that day creditors appeared and established debts to the satisfaction of the surrogate, to the amount of $2275,29; and he thereupon made an order, bearing date on the last mentioned day, authorizing the administratrix to sell certain portions of the real estate to pay those debts. By the affidavit on file, however, it appeared that the notice to show cause which was published in the state paper, was first published on the thirty-first of January, only thirty-eight days before the time appointed by the surrogate. Under this order, the administratrix advertised and sold real estate to the amount of $10,470, which sales were duly reported to the surrogate on the 20th of September, 1834, and confirmed by him; but before the sales were completed and the deeds given by her to the purchasers the administratrix died. On the 8th of December, 1834, T. A. Emmett, upon the petition of Constantine Smyth, the only

surviving heir of Charles Smyth, was duly appointed by the surrogate administrator *de bonis non,* and was also directed, by an order of that date, to execute conveyances for the lots thus sold, and to make further sales of the real estate of the decedent, for the purpose of satisfying his debts. He thereupon proceeded to give his conveyances accordingly, and brought into the surrogate's office of the proceeds of those sales to the amount of $6520, but it did not appear what had become of the residue of the purchase money of the sales made by Mrs. Smyth in her life-time. The money brought into the surrogate's office was only sufficient to pay sixty per cent upon the claims of the creditors that he afterwards permitted to come in and take a share thereof, in addition to the debts which were allowed upon making the order to sell.

On the 17th of November, 1835, and more than three years after the granting of letters of administration on the estate of Charles Smyth, States Wilkins, as the personal representative of Ann Smyth, the administratrix, presented a petition to the surrogate claiming a debt of $10,000, as due to her estate from the estate of her deceased husband, upon a judgment recovered against him in the name of Thomas Addis Emmett, deceased, as her trustee, in October, 1811 ; and praying that the administrator *de bonis non* might be required to mortgage, lease, or sell the real estate of the decedent for the payment of his debts. On presenting that petition, an order was made by the surrogate for Emmett, the administrator *de bonis non,* to appear and show cause why he should not be required to proceed and sell the real estate of his intestate for the payment of his debts. The administrator appeared by his counsel, and the case was adjourned from time to time, until after the death of Constantine Smyth, the only remaining heir at law, who died on the 28th of December, 1835, without issue and without heirs. The counsel for the administrator afterwards, and without any notice having been published for the heirs of C. Smyth to show cause why the debt should not be allowed, and a further sale of the real

estate not embraced in the former orders should not be made, withdrew his opposition to the claim of Wilkins ; and, as the counsel for Wilkins supposed, the surrogate allowed the claim sometime in Jaunary, 1836. But no order was then made and entered in the books of the surrogate upon the application, and no entry of the allowance of the debt was made. The administrator *de bonis non*, supposing himself authorized, under the order of the 8th of December, 1834, to proceed and sell other lands not specified in the first order of sale, proceeded to advertise and sell the residue of the real estate. And on the 19th of July, 1836, several parcels thereof were sold at public vendue, as and for a good title, and were bid off by the respondents, Seaman Lowerre and Andrew Wright ; and one parcel was struck off to the respondent, T. M. Hooker, who was not present at the sale, and without any authority from him to the auctioneers to do so. The sales were afterwards duly reported to the surrogate, and confirmed as the sales made under the orders of the 10th of March and of the 8th of December, 1834. After the making of these sales in July, 1836, the counsel of the purchasers, Lowerre and Wright, having examined the surrogate's records and finding, as they supposed, that the proceedings were irregular, so advised their clients, who accordingly declined to complete their purchases. Afterwards, and some time in the month of September, 1836, the counsel who had appeared for the administrator on the application of Wilkins, brought to the surrogate's office an order of sale to be entered, bearing date on the 5th of January previous, and requested the clerk to enter it. The clerk declined to do so, as he was not aware, as he stated to the counsel, that any such order had been directed by the surrogate, who was not then present. The counsel for the administrator afterwards saw the surrogate, who directed the order to be entered, and told the clerk to enter the $10,000 claim of Wilkins as allowed, as the counsel of the administrator had withdrawn all opposition thereto. The clerk accordingly entered that debt as allowed on the 15th of September, 1836, and entered the order

as of the date of the 5th of January previous; though, as he stated in his affidavit, produced by the respondents in the court below, he did not think or believe that the surrogate saw the date of that order, or knew that it was antedated at the time he directed it to be entered. That order, after reciting the previous orders of the 10th of March and the 8th of December, 1834, and that the sales made under those orders were insufficient to pay the debts, and reciting the subsequent allowance of the $10,000 claim of Wilkins upon the judgment in the supreme court, as a good and valid claim against the estate, but to be postponed to the payment of all other debts, ordered and directed the administrator *de bonis non*, as well as for the purpose of satisfying the debts first allowed as 'of the claims and debts subsequently allowed, including that judgment, forthwith to sell the two pieces of land, in the order described, (which were the same lands sold in July, 1836,) and that he should make return of the sales to the surrogate for confirmation before the execution of any conveyances to the purchasers, and pay the proceeds of the sales to the surrogate to be disposed of by him according to law.

In December, 1838, G. F. Butler, the appellant, to whom Wilkins, the administrator of Mrs. Smyth, had assigned all his interest in the judgment on the 9th of November, 1835, presented a petition to the surrogate, setting forth some of the proceedings which had taken place before the surrogate, and stating, among other things, the report of the sale by the administrator *de bonis non*, and the order confirming the same, and that such administrator had not proceeded to execute deeds to the purchasers as directed by the order of the 14th of October, 1836, nor paid to the petitioner the amount of the judgment so assigned to him or any part thereof, and praying that such administrator *de bonis non* might be directed by the order of the surrogate to proceed and tender the conveyances to Lowerre, Wright and Hooker, the purchasers; and that they might be directed forthwith to complete their several pur-

chases, and pay the consideration money therefor into the office of the surrogate, or that an attachment might be granted against them; and that Bleecker & Sons, the auctioneers by whom the premises were sold, might be directed to pay the ten per cent deposited by the purchasers at the time of such sale, or for such other or further order as the nature of the case might require. Upon the presenting of that petition, the surrogate issued a citation to Emmett, the administrator, and to the purchasers and to Bleeker & Sons, the auctioneers, to show cause before him on the second of January, 1839, why the prayer of the petition should not be granted. And after hearing the several parties and their affidavits and other proofs, the surrogate came to the conclusion that the proceedings in relation to the sale of the said real estate had not been had pursuant to the directions of the statute on that subject, and were therefore *coram non judice* and void, so that the purchasers would not obtain a good title under any conveyances which the administrator might execute. And the surrogate being also satisfied that he had no jurisdiction over the purchasers or the auctioneers to make such an order as was asked for by the petitioner against them, he made an order denying the prayer of the petition as to Emmett, the administrator, and dismissed the petition as to the others. From this decision and order of the surrogate, Butler appealed to the chancellor.

*A. L. Jordan*, for the appellant.

*L. W. Kip & W. C. Wetmore*, for the respondents.

THE CHANCELLOR. As it was expressly denied by Hooker that he was present at the sale, or ever authorized the auctioneers or any other person to bid upon the property for him or in his name, there is no pretence of claim against him. He was therefore very improperly made a party to this appeal. The order of the surrogate dismissing the petition as to him must be affirmed with costs

in this court to be taxed. And he is to be permitted to enrol the decree of affirmance and to take out an execution here to recover those costs.

The case as to the other respondents, and particularly as regards the administrator *de bonis non*, presents a great variety of questions, some of which I will now proceed to consider. In addition to the objection made by the counsel for the respondents, however, it may be proper to remark that the petitioner does not appear to be entitled to the benefit of the proceedings on the petition of Wilkins to the surrogate, presented on the 17th of November, 1835, and the supposed allowance of the estate of Ann Smyth of $10,000 by the surrogate upon the proceedings founded thereon; for it appears by the petition of the appellant, that he had purchased all of Wilkins' interest in that judgment on the 9th of November previous. Wilkins, therefore, was not a creditor of the estate of C. Smyth, either in law or in equity on the 17th of November, and had no authority to institute proceedings to compel a sale of the real estate for the benefit of Butler. Even if the judgment for the benefit of Mrs. Smyth had been standing in his name as trustee, I am inclined to think the proceedings could not have been instituted in his name after he had assigned all his interest in the judgment to another. But as the judgment was in the name of T. Addis Emmett, the elder, and Wilkins, as administrator of his mother, was a mere cestui que trust, it is very evident that he had no right to institute such a proceeding in his own name after he had assigned all his beneficial interest in the judgment to Butler.

Again; the judgment, if valid, was a subsisting lien, as against the heirs at law of the defendant therein, upon all the real estate of which the intestate died seized in the city of New-York, or elsewhere in this state. And I am inclined to think the objection is well taken, that a judgment creditor standing in that situation cannot institute proceedings before the surrogate to compel a sale of the real estate on which his judgment is a lien. The thirty-second section

1839.

Butler
v.
Emmett.

of the title of the revised statutes, under which the proceedings were instituted, (2 *R. S.* 105,) declares in express terms, that every sale and conveyance made pursuant to the provisions of that title shall be subject to all charges by judgment, mortgage, or otherwise, upon the lands so sold existing at the time of the death of the testator or intestate. And it seems to follow as a necessary consequence that the mortgagee, or judgment creditor is not entitled to any part of the avails of the estate thus sold, to satisfy the incumbrance which still remains upon the land in the hands of the purchaser. Where the whole real estate to which the incumbrance extends is sold, there, perhaps, may be an arrangement made between the personal representative of the decedent and the bidders, at the sale under the surrogate's order, that the incumbrance shall be paid off out of the amount of the bid ; so as to give the purchaser a clear title. But in that case the amount of the incumbrance to be paid must be ascertained and paid out of the purchase money, by the seller ; and the surplus only should be reported to the surrogate, and paid over to him, as the actual proceeds of the sale to be distributed among the creditors. Such an arrangement being a mere matter of convenience which the lien creditor has no right to insist upon, I do not see how he can, consistently with this section of the statute, either apply to the surrogate to compel a sale, or come in and prove his debt before the surrogate, for the purpose of having it paid out of the proceeds of the real estate on which it is a lien.

It is not necessary for the decision of this case to inquire whether the administratrix was authorized to apply for a sale of the real estate, before she had made and filed an inventory of the personal property, or a statement showing that none existed, duly verified in the form prescribed by the sixteenth section of the article of the revised statutes relative to the duties of executors and administrators in taking and returning inventories. (2 *R. S.* 85.) In every respect, except as to the form of the inventory and the manner of verification prescribed, the sworn statement in the petition

on which the first order of sale was founded, that the decedent left no personal estate whatever which she had been able to ascertain or discover, answered all the purposes of an inventory. And if the surrogate had jurisdiction to grant the order, for the persons interested in the estate to show cause why the same should not be sold, the irregularity of making the order to sell before the six weeks notice was duly published in the state paper, was probably cured by the subsequent petition of the only surviving heir at law to appoint an administrator de bonis non to carry the sales which had taken place under that order into effect.

I do not understand, however, the heir as consenting to any subsequent sales, except such as had been authorized by the order of the tenth of March, 1834, and to satisfy debts which had been already ascertained and allowed. And I presume the order of the 8th of December, 1834, did not authorize the sale of any lands not specified in the previous order ; although there is no copy of that order in the surrogate's return. The surrogate is required, in his order of sale, to specify the land to be sold. (2 *R. S.* 103, § 20.) And if there were no lands specified in the order of the 8th of December, then it is perfectly clear that the administrator de bonis non was only authorized under that order, to sell the lands specified in the previous order of the 10th of March, if any of them still remained unsold. The administrator, however, acted upon the supposition that the order of the 8th of December authorized him to sell the lands purchased by Lowerre and others, in July, 1836 ; as his return to the surrogate shows that he sold them under that and the previous order, and not under the supposed order of the 5th of January, 1836, which was not entered until after that sale.

If the order of the 5th of January, 1836, was actually made at that time by the surrogate, and if he was then authorized to make such an order, he probably had the right afterwards to enter it nunc pro tunc, as of that date, if by any inadvertence it was not entered in the books of his office at the time it was made. I am satisfied, however, that

he had not jurisdiction and power to make such an order founded upon the petition of Wilkins. In addition to the objection that a judgment creditor could not apply for a sale of real estate on which his judgment was a lien, and that he had sold and assigned all his interest in the debt as cestui que trust before the presenting of that petition, as an original application by a creditor to compel the administrator to proceed and sell real estate not embraced in the former order of sale, and for the satisfaction of a debt not previously ascertained and allowed by the surrogate in the manner prescribed by the revised statutes, the application to the surrogate should have been made within three years from the time when the original letters of administration were granted to Ann Smyth, on the estate. (2 *R. S.* 108, § 48.) And it is not sufficient in such case, even when the creditor applies within the time prescribed by law, for him merely to cite the personal representative, to show cause why the application should not be granted. If the petitioner's claim is founded upon a new debt not before allowed as valid, and if he seeks a sale of other portions of the estate which the executor or administrator has not been already authorized to sell, the surrogate, if no cause to the contrary is shown, must in the first place make an order for the persons interested in the estate to show cause why such sale should not be made, for the purpose of giving the heirs or devisees an opportunity of contesting the alleged indebtedness, or showing that a sale of the real estate is not necessary. And notice of such order must be duly published as upon an original application by the executor or administrator. (2 *R. S.* 108, § 50.) Here no such previous order or notice was given; but the order of the 5th of January is founded solely upon the withdrawal by the counsel of the administrator of his opposition to the claim of the petitioner. If the administrator was the general agent of the heir at law, and was authorized as such to appear and consent to a sale without such previous order or notice, the death of the heir at law, before any such consent was given by the counsel of the administrator, necessarily

revoked the agency and power. In this case, however, the administrator clearly never had any such power from the heir at law. At least there was nothing before the surrogate from which any such power could fairly and legally be inferred.

For these reasons I think the surrogate was right in the conclusion at which he arrived, that this sale was unauthorized ; that no conveyances which could be given by the administrator de bonis non, would be sufficient to protect these purchasers in the enjoyment of the premises. The appellant's remedy, therefore, if this is a valid judgment, is to revive it in the name of the personal representative of the nominal plaintiff, with his assent, and to sell the real estate on execution ; or to come in before the vice chancellor upon the decree of foreclosure, which it appears has been entered there, and establish his claim to the surplus as against the people of the state to whom it is said the property now belongs by escheat. This is sufficient to dispose of the whole case upon this appeal, as the appellant has no claim to relief as against any of those whom he has made parties to these proceedings. It is not necessary, therefore, that I should examine and decide the question whether a surrogate has jurisdiction and power to compel the purchasers under a regular order of sale made by him to take the title and pay the purchase money. I think, however, there can be very little doubt that the decision of the judge *a quo* was right upon that point also.

The order appealed from must be affirmed, with costs, as to all the respondents who have answered the petition of appeal. And they are at liberty, after the decree of affirmance is enrolled, to take out their executions for costs in this court.