## J. T. WATERHOUSE *vs.* J. D. SPRECKELS and W. G. IRWIN.

APPEAL FROM DECISION OF THE CHIEF JUSTICE ON DEMURRER.

OCTOBER TERM, 1884.

JUDD, C. J. ; McCULLY AND AUSTIN, JJ.

Plaintiff, in 1864, wrote to W. L. Green a letter of apology, and authorized him to print and circulate 100 copies thereof. In 1884, defendants, as plaintiff alleges, intending to injure the character, feelings and reputation of the plaintiff, and without knowledge or consent of said W. L. Green, published and circulated several hundred copies of said letter, to the damage of plaintiff to the amount of $50,000.

Held, reversing the decision of the Chief Justice, that the time and manner of the publication complained of made it a libel; that action for a libel cannot be sustained, for it is the plaintiff's own letter; and that damages cannot be severed, and classed partly as injuries by libel, and partly by unauthorized publication of a private letter.

Demurrer sustained.

Judd, C. J., dissenting.

### OPINION OF THE COURT, BY AUSTIN, J.

THIS is an action to recover damages for personal injury. The defendants demurred to the complaint; the Chief Justice overruled the demurrer, and the defendants appealed to this Court.

The allegations of the complaint, in substance, are that the plaintiff, in 1864, wrote to W. L. Green a letter, which is quoted, being an apology for misstatements acknowledged therein to have been made to injure the said W. L. Green, and the firm of which he was a partner, in their business and reputation, and in which the writer says that he encloses a check for $300 to pay expenses in a suit for slander then pending against the writer, also to pay for 100 printed copies of the apology, should Mr. Green desire to print the same, in order to give him opportunity for circulating them to repair any injury which he might have suffered by what the writer had said or done.

And, further, the complaint alleges "that on the 7th day of June, 1884, the defendants, intending to injure the character, feelings and reputation of the plaintiff, did, without the knowledge or consent of the said W. L. Green, or of the plaintiff, wrongfully and injuriously print, publish and circulate, or cause to be printed, published and circulated, a large number, that is to say, several hundred copies of the said letter, and did so wrongfully and injuriously cause the said copies of the said letter to be distributed and delivered to divers residents of Honolulu, and other persons residing in this Kingdom." All of which actions and doings by the defendants, the plaintiff alleges, were done in contravention of his private rights under the laws, and to the damage of the plaintiff to the amount of $50,000.

The first question to be considered is the nature of the action. The Chief Justice held that it is not and cannot be treated as an action for civil damages for a libel. On further examination of the complaint and the law, we think that, under our statute, the holding of the Chief Justice was error.

Our statute declares (Section 1, Penal Code) that " a libel is a publication in writing, print, or by a picture, statue, sign, or a representation other than by words merely spoken, which directly tend to injure the fame, reputation or good name of another person, and to bring him into disgrace, abhorrence, odium, hatred, contempt or ridicule, or to cause him to be excluded from society." Sec. 5 declares, "In every prosecution for writing or publishing a libel, the defendant may give in evidence, in his defense upon the trial, the truth of the matter contained in the publication charged to be libelous ; provided, however, that such evidence shall not be deemed a justification, unless it shall be further made to appear on the trial that the matter was published with good motives, and for justifiable ends."

The principle that in criminal prosecutions for a libel the truth is no defense, unless published with good motives and for justifiable ends, is now substantially matter of statute in England (6 and 7 Vict.: See Odgers on Libel and Slander, 390) and is almost universally the law in America by statute, or constitution, or decision.

Prior to the statute of Victoria in England, since the reign of

James I, the truth was no justification in a criminal case. 2 Kent, 19.

But in civil cases for libel or slander, for over a hundred years, the law has been settled everywhere that the truth, when pleaded and proved, is a defense, whether the damages claimed are general or special, and however malicious the publication may have been.

See Kent, pp. 19 and 25 ; Odgers, pp. 169 and 289.

The reason of the distinction is apparent. Criminal punishment is attached to libel because it is believed to tend to a breach of the peace. Slander has never been so punished, because from its comparatively ephemeral nature it was held not to endanger such a breach. In civil actions for a libel, as the very action brought shows that no breach of the peace is likely or intended, the truth is a defense. 2 Kent, pp. 16 and 19.

In actions for civil damages for a libel, in Chitty and the well-settled English precedents, the allegations are that the libel is false.

In the proofs at the trial, however, falsity need not be first shown, though averred, but truth comes in as a defense, and properly the averment of falsity should not be required, nor is it required here.

Odgers, p. 169.

Our statute defines a libel to be a publication in writing, etc., which directly tends to injure the fame, reputation or good name of another person, and to bring him into disgrace, etc.

It is libel if it tends to disgrace a person, and to injure him in either of the particulars named. Proof of injury in all these respects is not necessary, nor need it be alleged.

The allegation in the case at bar is of injury to the character, the feelings and the reputation of the plaintiff. The publication, as quoted in the complaint, is manifestly libelous in its nature, and the time and manner of its publication, as averred, after twenty years of silence, against a merchant, a private citizen, made it libel, punishable under our statute, whether true or false.

The complaint positively affirms that the article published is true, but the other statements alleged, if taken as true, show libel of which defendants might be convicted on indictment. The de-

fendants have the benefit of the allegations in the complaint as though written in the answer ; and upon these and upon all the facts set forth, there can be no recovery in this action unless we overturn the well-settled authorities of a hundred years. Whether published matter which is counted on is a libel depends upon its nature, and not upon the kind of action in which it is set forth or upon its truth or falsehood.

It is also held that an injunction to restrain the publication of a libel will not lie except after verdict of a jury declaring the publication to be libelous.

Odgers, pages 13 and 16, and cases there cited.

If this action, therefore, were brought against the defendants to restrain the further publication of what manifestly appears in itself to be a libel, it could not on that ground prevail ; but it may be, under the authorities quoted by the Chief Justice, and by reason of the plaintiff's property in the substance of the writing, as its author, that the defendants having it in hand, however obtained, might because of such property be restrained from its further publication.

The publication, however, being made, that act done, as we have shown, constitutes it a libel, and the damages thereby occurring are damages in consequence of a libel, and cannot be otherwise recovered for. Those damages cannot be severed, and classed partly as injuries by libel and partly by unauthorized publication of a private letter, which might have been enjoined.

For these reasons the decision below must be reversed and the demurrer sustained.

### CONCURRING OPINION OF MR. JUSTICE McCULLY.

In this matter I arrive at the same conclusion with Mr. Justice Austin, that the demurrer should be sustained, and had written my opinion at somewhat greater length than is here appended. It will be unnecessary to restate the case a third time.

It seems very clear that action cannot be sustained on the complaint in this case as for a libel, for it is the plaintiff's own letter. The counsel for the plaintiff concedes this in his argument before us, although citing Cooley on Torts, p. 208, *note*, for authority that the truth of the publication is not always a defense in civil cases.

We find this note to be only an expression of the learned author's opinion of what the law ought to be, against his statement in the text of what it is. He says in the note: "It is questionable whether the law ought not to hold truthful publications libelous in some cases where they relate to matters that no one has any business to bring before the public at all and are made with no other purpose than to annoy and subject to ridicule. Thus it is conceivable that the most innocent acts in a man's private life or personal peculiarities for which he is in no way responsible may be so made use of by a mischievous person as to destroy the comfort of life, and it seems unreasonable that no personal redress can be had. * * * It would seem that there ought to be some remedy besides such as the public authorities may see fit to pursue."

We have then the opinion of this distinguished jurist that for such a class of cases as he instances there is no remedy by civil action, although contrary to a sense of justice. The law in respect to words of most injurious character to feelings and reputation has been characterized by Lord Campbell as "unsatisfactory," and Lord Brougham would substitute the word "barbarous."

Chancellor Kent says: "There is much justice and sound policy in the opinion that in private as well as public prosecutions for libels the inquiry should be pointed to the innocence or malice of the publisher's intentions. The truth ought to be admissible in evidence to explain that intent and not in every instance to justify it."

I understand the effect of these eminent authorities to be that a plaintiff cannot maintain a civil action for libel by the publication of his own letter, although they regret that a mischievous or malicious publication may not be a ground of action for recovery of damages.

But if it is not to be maintained as a libel, although it is a publication of and concerning the plaintiff, what grounds of action appear? It is clear by the authorities that Equity will enjoin the publication of letters on the ground of exposing private confidence, but it does not follow that if the publication of the latter class have been made that damages can be recovered for injury to the feelings or reputation of the writer. There cannot be said in the present case to be a violation of confidence, for the writer had sent

the letter with leave to publish and it had been published. There is no allegation of a loss to the writer by a second publication and his claim is not for loss but for damage to reputation.

The plaintiff also relies upon the provisions of Sec. 1116 of our Civil Code. This gives a form in which actions may be brought upon unliquidated demands. It is the complement of the form given in Sec. 1100, for actions on vouchers certain or computable by the Court, and of the form given in Sec. 1118 for the recovery of specific property. It (Sec. 1116) covers the wide range of all common law actions not coming within the specific limits of the other two. But it cannot be considered that this meagre form thereby dispenses with the application of all the settled principles of common law actions. If it would, this action might be treated as a libel, whatever requisites of such an action, as held by all the authorities, it might lack. The form leaves all these to be maintained by this parenthetical clause ("here set forth the cause and the manner in which the injury was done, circumstantially with the view to proof")—that is to say, set forth a legal cause of action with legal claims for damages.

If an action is brought for a publication, it must set forth legal grounds for recovery of damages, or that such publication produced a loss to the plaintiff. Failing this, the form is empty.

DISSENTING OPINION OF CHIEF JUSTICE JUDD.

I feel obliged to adhere to my former opinion on the demurrer. I think that there is a remedy in *case* for the injury complained of, distinct from the conventional action of libel; and for this reason respectfully dissent from the above opinions of my learned brethren.

*A. S. Hartwell* and *E. Preston*, for plaintiff.

*Paul Neumann* and *F. M. Hatch*, for defendants.

Honolulu, December 30, 1884.

OPINION OF CHIEF JUSTICE JUDD, APPEALED FROM.

This is an action on the case to recover $50,000 damages, resulting to plaintiff for injury done by the defendants to the character, feelings and reputation of the plaintiff. The declaration alleges :

1. That for thirty years and upwards the plaintiff has carried

on, and still carries on, the business of a general merchant, importer and retail storekeeper in the city of Honolulu.

2. That in the year 1864 the plaintiff had certain disputes and differences with one W. L. Green, a merchant, then and now residing in Honolulu,

3. That in order to settle and arrange the said disputes and differences, the plaintiff wrote and sent a letter to the said W. L. Green, a copy whereof is annexed to the complaint, marked "A."

4. That by the said letter the plaintiff authorized Mr. Green, but no other person, to print and circulate, should he so desire, 100 copies, but no more, of the said letter.

5. That on the 7th day of June, of this year, the defendants, intending to injure the character, feelings and reputation of the plaintiff, did, without the knowledge or consent of the said W. L. Green or of the plaintiff, wrongfully and injuriously print, publish and circulate, or cause to be printed, published and circulated, a large number, that is to say several hundred copies, of the said letter, and did so wrongfully and injuriously cause the said copies of the said letter to be distributed and delivered to divers residents of Honolulu, and other persons residing in this Kingdom.

All of which actions and doings by the defendants, the plaintiff alleges, were done in contravention of his private rights under the laws, and to the damage of the plaintiff to the amount claimed.

The defendants demur, and say that the complaint is insufficient in law, and urge particularly:

1. That the complaint does not allege that the letter published is untrue or defamatory.

2. No special damages can be recovered, for none are alleged to have resulted.

3. General damage cannot be presumed from publishing the truth. The truth is a complete and perfect answer to a civil suit for libel.

Townsend on Libel, p. 211; Odgers on Libel, p. 169.

4. The plaintiff cannot recover nominal damages, for he has no property in the letter. It is Mr. Green, the receiver's, property. The letter has no literary value. If it had, it has been given to

the world by the writer, and he has not secured its copyright.

5. The letter is a part of a judicial proceeding in the case of *Green vs. Waterhouse,* and no action is maintainable for such a publication.

6. The complaint contains no allegation of injury to plaintiff's business.

The publication may have been "officious, intermeddling and annoying," but these elements will not support an action. Nor if published with intent to injure.

7. The truth is a justification in a libel, though the motive be malicious.

Against these views the plaintiff's counsel urge :

1. In this case it is clear that the words of the letter were of and concerning the plaintiff personally in his business ; and also that the "publication directly tends to injure the fame, reputation and good name of the plaintiff," within the statutory definition of a libel.

But the falseness of the letter is not to be averred, and therefore it is possible that the present case cannot be classified technically as an action for libel. But it comes within all the evils which actions for libel are meant to prevent. It contains all the legal ingredients of a tort, and is not *damnum absque injuria.*

2. The declaration conforms to our statutory form. It avers an intent to do the injury, and an unauthorized act done, whereby injury has resulted to the plaintiff's character, reputation and feelings, and the act is one which tends to injure the plaintiff's business.

3. The truth of the publication is not always a defense in a civil action.

4. Even Mr. Green would be liable for publishing over 100 copies. But it does not appear that he published any. Defendant's publication of the letter for a malevolent purpose was more than officious intermeddling with private affairs, it was a tort.

5. The receiver of a letter cannot publish it without leave of the sender. An injunction would issue to restrain such wrongful act. The amount of damage for the wrong committed is immaterial in this discussion.

6. The old theory for the necessity of averring special damages,

was that they were required to be averred, when not presumed, in order to prevent surprise to the defendant. But as proof of damage, where the words published are defamatory and actionable *per se*, would be no less a surprise ; it shows that the theory is not based on principle, and ought not to be adopted.

7. A publication may be true, and yet be a libel. To rake up a buried feud, to spread before the community a statement which was made by one of the parties to that feud, for the sole purpose of ending it, and to do so for the malicious purpose of injuring such person, and more especially when such publication necessarily tends to affect injuriously his business, reputation and feelings, is a wrong, and it would be a reproach to a system of law based solely on right reason, to say of such malicious injury that it has no remedy, unless its effect can be shown to have been to wring dollars out of the plaintiff.

8. Equity will restrain the unauthorized publication of private letters, on the ground of violation of confidence and injury to the feelings.

Cooley on Torts, pp. 356 to 359 ; Kerr on Injunctions, pp. 187 to 189 ; Pomeroy Eq. Jur., Sec. 1358 ; 2 Story Eq. Jur., Sections 946, 948.

### By the Court.

The first question to be decided is, whether this complaint is to be judged according to well settled rules concerning civil actions for libel. If it is, then it is clear that the demurrer must be sustained ; for the complaint does not aver that the words in the publication are defamatory. Moreover, they are not alleged to be false. A libel, according to our statutes, is a "publication in writing, print, or by picture, statue, sign or a representation other than by words merely spoken, which directly tend to injure the fame, reputation or good name of another person, and to bring him into disgrace, abhorrence, odium, hatred, contempt or ridicule, or cause him to be excluded from society."

It has been settled by a long course of legal decisions that defamatory words are those which produce any perceptible injury to the reputation of another. These, if false, are actionable, and general damages may be recovered of the person using them, without proof that any particular damage has followed their use.

It is also settled that the fact that the words employed by the defendant have perceptibly injured the plaintiff's reputation may be *presumed* from the nature of the words themselves.   Also, if the words, being written and published or printed and published, are in any way disparaging to the plaintiff and tend to bring him into ridicule or contempt.

As above stated, the publication complained of is not alleged to be defamatory.   It is therefore unnecessary to consider whether it has in fact that character.   For this reason alone the plaintiff cannot recover general damages on his complaint, as for a libel.   Nor can the plaintiff recover special damages, as for a libel, for he has failed to aver them in the particular manner required of the pleader in a libel suit.

I deem it unnecessary to discuss the question whether or not, considering our statute, the truth of the published matter is a complete defense to a civil action, for the complaint does not charge the matter published to be false, and it, purporting to be a copy of a letter written by the plaintiff himself, could not well be alleged to be false.

I pass now to consider whether the plaintiff has a cause of action in his case stated in the complaint, independently of the law governing libels.

This is a novel question and may be thus stated :   A letter was written by a merchant in Honolulu twenty years ago as an apology and in order to settle and compromise a suit for slander.   The letter was written to a person not the defendant, and closes with the statement:   "I beg to enclose herewith a check for $300 in your favor to pay the expenses you have already been put to in the suit against me, and also to pay for 100 printed copies of the apology should you desire to print the same, in order that you may have an opportunity, by circulating them, of repairing any injury you may have suffered by what I have said or done."   Permission was thus accorded by the writer to the receiver of the letter to print 100 copies of the letter and to circulate them, presumably among those who might have been unfavorably affected toward the receiver by the plaintiff's statements.

The complaint charges that the publication of this letter by the defendants was with the intent to injure the character, feelings

and reputation of the plaintiff, and that it was done without the knowledge or consent of the receiver, Mr. W. L. Green, or of the plaintiff, and that the defendants wrongfully and injuriously printed and circulated a large number, that is to say several hundred copies, and delivered and distributed them to divers residents in Honolulu and other persons residing in this Kingdom.

In considering whether the plaintiff can recover damages for this conduct of the defendants, these allegations must be taken as true.

Judge Story discusses the question as to whether courts of equity ought to restrain by injunction the publication of mere private letters on business or on family concerns, or on matters of personal friendship and not strictly falling within the line of literary compositions. 2 Story, Eq. Jur., Sections 946 to 949. .

This learned jurist says in Sec. 946: "In a moral view the publication of such letters, unless in cases where it is necessary to the proper vindication of the rights or conduct of the party against unjust claims or injurious imputations, is perhaps one of the most odious breaches of private correspondence, of social duty and of honorable feelings which can well be imagined. It strikes at the root of all that free and mutual interchange of advice, opinions and sentiments between relatives and friends and correspondents which is so essential to the well-being of society and to the spirit of a liberal courtesy and refinement. It may involve whole families in great distress from the public display of facts and circumstances which were reposed in the bosoms of others under the deepest and most affecting confidence that they should forever remain inviolable secrets."

Sec. 947. "It would be a sad reproach to English and American jurisprudence if courts of equity could not interpose in such cases, and if the rights of property of the writers should be deemed to exist only when the letters were literary compositions. If the mere sending of letters to third persons is not to be deemed, in cases of literary composition, a total abandonment of the rights of property by the sender, *a fortiori*, the act of sending them cannot be presumed to be an abandonment thereof in cases where the very nature of the letters imports, as matters of business, or friendship, or advice, or personal confidence, the implied or necessary intention of duty and secrecy."

Sec. 948. The author here says that private letters may be required to be produced for the purposes of public justice, and adds : * * * "But it by no means follows that private persons have a right to make such on other occasions, upon their own notion of taking the administration of justice into their own hands, or for the purpose of vindicating their own conduct, or of gratifying their own enmity, or of gratifying a gross and diseased public curiosity by the circulation of private anecdotes, or family secrets, or personal concerns."

948 *a.* "But the utmost extent to which courts of equity have gone in restraining any publication by injunction has been upon the principle of protecting the rights of property in the books or letters sought to be published. They have never assumed, at least since the destruction of the Court of the Star Chamber, to restrain any publication which purports to be a literary work, upon the mere ground that it is of a libelous character and tends to the degradation or injury of the reputation or business of the plaintiff who seeks relief against such publication. For matters of this sort do not properly fall within the jurisdiction of courts of equity to redress, but are cognizable in a civil or criminal suit at law."

Judge Cooley (Cooley on Torts, 358), in commenting upon a New York case, in which Chancellor Walworth held that he would not enjoin the publication of private letters unless they had a literary value (*Hoyt vs. Mackensie*, 3 Barb. Chan., 320), says : "It was also held that if the contents of the letter were such that it could not be supposed that the writer would consent to its publication, the conclusion must be that the letter has no value as a literary production. But this is a remarkable *non sequitur*, especially as in the very case in which the decision was made the defendant had published the plaintiff's letters, surreptitiously obtained, expecting to derive a profit therefrom." Mr. Justice Story has strongly contended for the jurisdiction of equity to restrain the publication of private letters on the ground of violation of confidence and injury to the feelings, and this seems the most reasonable doctrine, and it receives countenance from cases cited in the margin." Of these cases only one is accessible to me : *Eyre vs. Higbee*, 35 Barb., 502. This case decides that private

32

letters received by a person in his lifetime are not assets in the hands of his administrator and subject to sale to pay debts.

The receiver has only a qualified property in them. At the most he has only a joint property with the writer. As laid down by Lord Eldon in *Gee vs. Pritchard*, 2 Swanston, 402 : "The property is qualified in some respects ; that by sending the letter the writer has given, for the purpose of reading it, and in some cases of keeping it, a property to the person to whom it is addressed, yet that gift is so restrained that beyond the purposes for which the letter is sent the property is in the sender. Under such circumstances it is immaterial whether the intended publication is for the purpose of profit or not. If profit, the party is then selling, if not for profit, he is then giving that, a portion of which belongs to the writer."

This case is not accessible to me, but Judge Mullin, in *Eyre vs. Higbee*, in commenting upon it, says : "The English Court of Chancery has extended its protection, by means of injunction, over letters on matters of business or friendship, and for the reason that the writer has an interest in them, and it would not permit a breach of his confidence in allowing the publication."

Under these authorities the receiver of the letter in question would not be authorized to make publication of it to any extent greater than authorized by the writer.

A *fortiori* third parties, as these defendants are, have no such authority.

Even Judge Story, though finding that courts of equity would not exercise the injunctive power of the Court unless the letters were of literary value, says that these matters are "cognizable in a civil or criminal action at law." Vide Supra, Sec. 948 *a*.

In *Brandreth vs. Lane*, 8 Paige Ch. 23, Chancellor Walworth refused to restrain the publication of a libelous work, but left the plaintiff to his action at law.

In *Woolsey vs. Judd*, 4 Duer, 379, it is held that a court of equity cannot prevent the publication of private letters merely on the ground that such publication is injurious to the interests of society. It must stand on the ground that the writer has an exclusive property remaining in him, and the right to an injunction

does not depend upon the question whether the letter possess value as a literary composition.

Wait's Digest, Title Injunction.

But Chancellor Kent, 2 Commentaries, 381, says: "The publication of private letters ought to be restrained when it would be a breach of confidence and trust, as letters of courtship, or *when injurious to the character or happiness of others.*"

In *Hopkinson vs. Lord Burghley*, 2 L. R. Ch. App. 448, Lord Cairns says: "The question in all these cases is, what was the purpose or object in the mind of the person sending the letter. The writer is supposed to intend that the receiver can use the letter for any lawful purpose, and it has been held that publication is not such a lawful purpose."

It seems to me that as the complaint avers that not only was an injury intended to plaintiff by defendants, but that one was done to the feelings, character and reputation of the plaintiff by the wrongful and injurious publication of this letter, this injury is not one that is without redress.

Upon principle, and I think upon sufficient authority—to-wit, Mr. Justice Story, Lord Cairns and Judge Cooley—the plaintiff ought to have the remedy for the wrong done him. Where there is a right there is a remedy. As Lord Holt has said : "It is a vain thing to imagine a right without a remedy, for want of right and want of remedy are reciprocal." *Ashby vs. White*, Ld. Raymond, 938. 1 Smith's Leading Cases, 105. Here the plaintiff had been denied the right to vote for members of Parliament. "No such case," says Cooley, "had ever been adjudged and there was no precedent for the suit. But in the opinion of Lord Holt a precedent was not important; the material question was, had they a right to vote ? When the facts were found in their favor, the legal conclusion must follow : Having a right, the remedy was of course."

In the case before me the wrong has been done, the letter has been published ; it cannot now be restrained by injunction. To sustain this demurrer would be to hold that the defendants may continue to publish this letter from year to year, indefinitely, in all parts of the world, wherever the defendants may think it would damage the plaintiff. It would be a reproach to justice to say that

such conduct is remediless.    The measure of damages is not raised by the demurrer.    It is properly a matter of instruction to the jury.

I overrule the demurrer.

Honolulu, July 26, 1884.